H.R. OWEN, Plaintiff-Appellant,

v.

Harley G. OWEN, and Mary Owen,
Defendants-Respondents.

No. 12231.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 17, 1982.

David L. Smith, Cantwell, Allman & Smith, Branson, for plaintiff-appellant.

Jerry L. Redfern, Paul G. White, Neale, Newman, Bradshaw & Freeman, Springfield, for defendant-respondent Mary Owen.

No appearance for defendant-respondent Harley G. Owen.

TITUS, Judge.

H.R. and Harley Owen are brothers. Harley was married to Mary but on September 13, 1979, Harley sued for dissolution. The marriage was dissolved before the appeal herein was perfected. Following the filing of the dissolution petition or on January 10, 1980, H.R. filed a two-count petition against Harley and Mary each of whom was represented by different counsel. In Count I, an equitable action, H.R. alleged that he had purchased shares of bank stock in the names of Harley and Mary as an accommodation to them in which they agreed to assign it to him upon request. H.R. averred he had demanded the agreed-to assignment be made to him but such demand had been refused. The count prayed the court to declare that a constructive trust of the stock existed in his favor and for the court to order Harley and Mary to transfer the stock to him. Count II alleged that H.R. had agreed to permit Harley and Mary, from October 1976 through August 1979, to collect rent from property belonging to H.R. under an agreement that the rent collected would constitute a loan from H.R. to Harley and Mary payable on demand. Although, the petition averred, demand for the payment of the $33,057.40 rent thus collected had been made, payment had been refused. H.R. prayed for a $33,-057.40 judgment against Harley and Mary.

Through their respective attorneys, Harley and Mary filed separate answers to H.R.'s petition. In addition, Mary counterclaimed for actual and punitive damages for abuse of process. Mary asseverated in the counterclaim that after Harley instituted the dissolution action she filed therein a motion seeking temporary orders declaring that Harley had converted $20,000 in marital assets into the joint names of H.R. and Harley and that H.R., in an attempt to defraud her of rightful marital property, filed the petition in this action "for the wrongful, unlawful and malicious purpose

and ulterior object of extorting money from [Mary] and seeking to assist [Harley] in his [dissolution] action ... and to deprive [Mary] of her right and lawful marital property." By reason thereof and the mental anguish resulting therefrom, Mary prayed for $25,000 actual and $100,000 punitive damages from H.R.

Following a jury trial, verdicts were rendered for Harley and Mary on both counts of H.R.'s petition and for Mary on her counterclaim in the sums of $15,000 actual and $40,000 punitive damages. H.R. appealed. Only H.R. and Mary have filed briefs and appeared in this court.

H.R.'s first point relied on is that the trial court erred in accepting the jury's verdict on Count II of the petition and in refusing to grant him a new trial thereon because, as a matter of law, the verdict was not supported by substantial evidence in that both H.R. and Harley testified that H.R. was owed the money claimed per the alleged agreement set forth in Count II, supra.

■■■ Jurors, as finders of the facts, are the sole judges of the credibility of witnesses and the weight to be afforded their testimony. Also, jurors have leave to believe or disbelieve all, part or none of any witness' testimony even though it goes uncontradicted or undenied. *Green v. Hastings,* 621 S.W.2d 549, 550[3] (Mo.App.1981). As Mary's answer to Count II of H.R.'s petition denied its allegations, Mary was entitled to have the jury pass upon the credibility of the testimony of H.R. and Harley even though she offered no contradictory evidence herself. *Davis v. Fiske,* 578 S.W.2d 328, 331[2] (Mo.App.1979). The principal difficulty with H.R.'s point and the argument thereto, is that he wholly ignores the foregoing principles of law and that while his testimony and that of his brother's (probably suspect to the jury under the circumstances) was favorable to the averments made in Count II of the petition, both point and argument completely ignore the fact that Mary testified exactly contrary to the assertions of her then husband and brother-in-law and that the jury had the right, as they obviously did, to accept

her testimony and disbelieve that contrary thereto. Point I is denied.

■■■ H.R.'s second and seventh points relied on will be considered in combination. These two points concern themselves with Count I of the petition. As acknowledged in H.R.'s brief, Count I was an equitable action seeking judicial declaration of a constructive trust of the bank stock in favor of H.R. and a decree ordering Harley and Mary to transfer the stock to him. The second point, in substance, is a contention that the jury's verdict on the count was not supported by substantial evidence. H.R.'s seventh point complains of an instruction given concerning Count I. What H.R. ignores in both points relied on is that there is no right to a trial by jury in a case of equity [*State ex rel. Willman v. Sloan,* 574 S.W.2d 421, 422[1] (Mo.banc 1978)] but when the equity issue is submitted to a jury its verdict is advisory only and if the court accepts the verdict, it is considered to be the court's own finding on the fact issue rather than that of the jury. In review of equity cases submitted to a jury, appellate courts consider the issues therein as having been determined only by the trial court. *Edwards v. Maples,* 388 S.W.2d 850, 852[2–4] (Mo.1965). In the instant cause the decree on Count I expressly stated it had been "submitted to the jury in an advisory capacity." Since a decree in equity is not dependent upon the correctness vel non of jury instructions, any errors made in the giving or refusing of instructions in an equity case will not be considered on appeal. *Conrad v. Diehl,* 344 Mo. 811, 816, 129 S.W.2d 870, 873[3] (1939). The second and seventh points are denied.

We next consider H.R.'s third and tenth points together. By these, in effect, H.R. claims the jury's verdict in favor of Mary on her counterclaim for abuse of process was improper because the only evidence concerning abuse of process involved matters transpiring before H.R.'s suit was filed with the exception of conversations between H.R. and Mary regarding offers of settlement which were improperly admitted by the trial court.

To sustain an action for abuse of process, the facts must demonstrate an illegal and improper use of such process that is not warranted or authorized, an ulterior motive in exercising such process and damages. *Wessler v. Wessler,* 610 S.W.2d 650, 651[2] (Mo.App.1980). The test employed is whether the process had been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he could not be compelled to do legally. *Barnard v. Barnard,* 568 S.W.2d 567, 571[14] (Mo.App.1978). Or stated somewhat differently, the privilege of process may not be used for an unlawful purpose such as using the litigation to extort money or anything of value from another. *White v. Scarritt,* 341 Mo. 1004, 1012, 111 S.W.2d 18, 22[5] (1937).

We do not comprehend H.R.'s assertion that things and matters occurring and arising between and affecting the parties prior to the filing of the action giving rise to an abuse of process claim may not be properly shown to the fact trier when the abuse of process cause is tried. Obviously things must occur and situations must develop before a litigant compels process to issue to accomplish some unlawful end or to compel his opponent to do a collateral thing which the opponent could not be compelled to do legally. Things and situations which occur and arise prior to the filing of formal action and issuance of the process clearly, at least to us, may well evidence the ulterior motive as to why the process has been exercised and abused.

Mary's trial evidence was that at and near the time Harley's petition for dissolution was filed on September 13, 1979, he gave his brother, H.R., some $73,956 in cash and merchandise. She also testified that when she asked H.R. about some of the money which Harley had given him, H.R. told her that if she didn't leave him alone about the matter he would sue her for "money, things, land, the income that we had." The dissolution proceeding was still pending with apparently no settlement thereof in sight when H.R. filed the instant action on January 10, 1980. The testimony

further revealed that several times after H.R. instituted the present action, including once within a week of trial hereof, H.R. told Mary that if she would accept $50,000 to terminate the dissolution proceedings "like they wanted me to," H.R. would "drop his lawsuit."

If believed by the jury, which it evidently was, Mary's evidence illustrates that H.R. wanted Mary to settle the dissolution action upon his or Harley's terms or upon both of their terms. In exchange for Mary's capitulation, H.R. would dismiss his action. This surely demonstrated the true and basic purpose of H.R.'s lawsuit, i.e., to coerce Mary into settling the dissolution action in a manner which she could not be legally forced to do. We believe that if the jury accepted this evidence, it showed an ulterior motive on H.R.'s part in bringing his action to do something collateral to the lawsuit which she could not be legally forced to do, i.e., capitulate in the dissolution action upon the terms dictated by H.R.

As a general rule, because the law favors settlements, evidence anent settlement negotiations is to be excluded at trial because such efforts should be encouraged and a party making an offer of settlement should not be penalized by revealing the offer to the jury if the negotiations fail to materialize. *Tripp v. Harryman,* 613 S.W.2d 943, 949[7] (Mo.App.1981). However, that general rule, like most, is subject to many exceptions and qualifications. One exception is that if an offer of settlement also constitutes an admission of an independent fact pertinent to an issue between the parties, then the offer of settlement is admissible on the trial of such issue. *McKeown v. John Nooter Boiler Works Co.,* 237 S.W.2d 217, 223[3] (Mo.App.1951); 29 Am.Jur.2d, Evidence, § 630, pp. 682–683. The evidence of H.R.'s offer to dismiss his lawsuit if Mary would accept $50,000 in satisfaction of all of her dissolution claims was clearly tendered to prove an independent fact pertinent to the issues between H.R. and Mary on her counterclaim, i.e., that H.R. had improperly used process to compel Mary to settle the dissolution of

marriage action on terms proposed by H.R. which was something Mary could not be legally compelled to do. H.R.'s third and tenth points relied on are denied.

H.R.'s fourth point is that the actual and punitive damages awarded by the jury and approved by the trial court were not supported by substantial evidence. He argues that the only evidence of actual damage was Mary's testimony that because of H.R.'s actions and lawsuit she had suffered mental anguish and had hired attorneys who had expended a minimum of 40 hours on the case with no showing of the lawyers' charges or the reasonableness thereof.

Albeit Mary's testimony was brief as to the fact H.R.'s actions had caused her "very much" mental anguish, the jury's consideration of the issue was not limited to Mary's abbreviated testimony on the subject. Rather it had the right, as it apparently did, to consider all of the events and circumstances surrounding the litigation. As already noted, there was evidence that at and near the time Harley filed to dissolve the marriage Harley diverted considerable marital assets with H.R.'s assistance in an apparent effort to thwart any effort by Mary to share in such property in the dissolution. Following this, H.R. filed this suit to divert further marital assets out of Mary's reach (bank stock and $33,057.40) and pressured Mary up until a week before trial of the instant action to settle the dissolution matter on terms dictated by H.R. The jury, we believe, could reasonably conclude that such conduct by H.R. caused Mary considerable mental anguish from September 1979 when he obtained some $74,000 in marital assets from Harley until February 1981 when the jury verdict terminated the trial in the instant cause. The evidence additionally showed that because of H.R.'s conduct and suit Mary was required to employ legal counsel to defend her rights and the claims espoused by H.R. Not counting the time the attorneys were in trial or the value of the legal expertise required to write the necessary pleadings, etc., the evidence showed the lawyer had expended 40 hours in case preparation.

If an amount was included in the verdict for fees, and we don't know whether it was, although there may be no precise testimony of the value of the attorneys' services, a trial court is considered to be an expert on such. *Empire Gas Corp. v. Small's LP Gas Co.,* 637 S.W.2d 239, 248[27] (Mo.App.1982). By considering what it finds to be a proper amount in comparison with the overall sum award, a trial court should be able to determine if the inclusion thereof was reasonable. Mary, under the facts, was entitled to recover for mental anguish suffered because of H.R.'s doings. Damages for mental anguish cannot be precisely measured [*Mitchell v. Pla-Mor, Inc.,* 361 Mo. 946, 950, 237 S.W.2d 189, 191[1] (1951)] and the determination of the amount thereof is primarily an issue for the jury. *Mansfield v. Smithie,* 615 S.W.2d 649, 655[15] (Mo.App.1981). The giving or denial of punitive damages and the amount thereof was wholly within the discretion of the jury and its assessment cannot be interfered with unless plainly abused. *Mitchell,* supra, 361 Mo. at 950, 237 S.W.2d at 191[2]. The awarding of punitive damages serves the purpose of punishing the wrongdoer and to deter him and others from similar wrongful conduct in the future. *Wisner v. S.S. Kresge Company,* 465 S.W.2d 666, 669 (Mo.App.1971). Deference is due the trial court when it has used its discretion in upholding a jury's award for damages. *Price v. Ford Motor Credit Company,* 530 S.W.2d 249, 256[19] (Mo.App.1975). Because of these considerations and the circumstances, we cannot say as a matter of law that the jury abused its discretion in awarding actual and punitive damages in the sums stated. H.R.'s fourth point is denied.

In his fifth point H.R. claims error in giving form of verdict "B" because it required the jury to find either in favor of or against both Harley and Mary on Count II of the petition instead of providing a verdict in favor of one defendant and against the other because Harley testified H.R. was due the $33,057 loan alleged and testified to by H.R. In part, the verdict form reads:

"On the claim of plaintiff H.R. Owen of a loan of money and for the payment thereof against defendant Harley G. Owen and Mary Owen, we, the undersigned jurors, find in favor of: _____ (Plaintiff H.R. Owen) *of* (Defendants Harley G. Owen and Mary Owen)." (Emphasis supplied).

 Included in the argument portion of H.R.'s brief to this point is the assertion that the giving of verdict form "B" was error because it contained "of" instead of "or" (see above emphasis) in a deviation from MAI 36.01. This claim of error is not reviewable in this court as H.R. did not raise it in his motion for a new trial or preserve it in the "Points Relied On" section of his brief as required by Rules 70.03, 84.13(a) and 84.04(d), V.A.M.R.; *Johnson v. Hunter,* 398 S.W.2d 449, 452[5] (Mo.App.1965). Moreover, we do not view the obvious typographical error as materially affecting the merits of the case. Rule 84.13(b), V.A.M.R. When read as a whole the verdict form made it clear the jury could return a verdict either for H.R. or for Harley and Mary. Absolute perfection is not the test. Rather the test is whether the verdict form was substantially correct and we conclude it was. *Stahlheber v. American Cyanamid Company,* 451 S.W.2d 48, 62[12] (Mo.1970).

 Verdict form "B" is predicated on an instruction tendered by plaintiff and given by the court. That instruction (with emphasis supplied by us) reads as follows: "INSTRUCTION NO. 10 Your verdict must be for plaintiff against defendant, Harley G. Owen, *and* defendant, Mary Owen, if you believe: First, plaintiff and *defendants* entered into an agreement whereby plaintiff agreed to allow *defendants* to receive rents from plaintiff's property under lease and *defendants* agreed to repay plaintiff rents *they* received upon demand by plaintiff, and Second, plaintiff performed his agreement, and Third, *defendants* failed to perform *their* agreement, and Fourth, plaintiff was thereby damaged."

This instruction written by H.R. required findings against both defendants. It did not permit a finding for one defendant and against the other. Verdict form "B" conforms exactly to Instruction 10 given at H.R.'s request. H.R.'s present challenge to the verdict form is nothing more than a disingenuous challenge to Instruction 10 which H.R. is not allowed to successfully make as, in tendering it, he vouched for its correctness. *Stevenson v. First Nat. Bank of Callaway County,* 604 S.W.2d 791, 795[8] (Mo.App.1980). The fifth point is denied.

 H.R.'s sixth point is an attack on Instruction No. 11 given at Mary's request because, so he says, the instruction constituted an improper deviation from MAI 4.01, 1980 Supp., and was erroneous because it was applicable only if the jury found against both Harley and Mary. "INSTRUCTION NO. 11 If you find in favor of plaintiff on plaintiff's claim of a loan of money to defendants and for the payment thereof from defendants, then you must award plaintiff such sum as you believe plaintiff loaned to defendants which defendants have not paid to plaintiff under the agreement mentioned in the evidence."

What has been written regarding H.R.'s complaints about form of Verdict "B" under the fifth point, supra, is applicable to his present complaint that Instruction 11 was erroneous because it did not permit a finding against only one defendant. In this regard, Instruction 11 conforms exactly to Instruction 10 given at H.R.'s request. Moreover, this complaint as to Instruction 11 was raised for the first time on appeal and is not reviewable here. Rules 70.03 and 78.07, V.A.M.R.

MAI 4.01 (adding "on plaintiff's claim for damages" because of Mary's counterclaim— Notes on Use 1) reads: "If you find the issues in favor of plaintiff on plaintiff's claim for damages, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained as a direct result of the occurrence mentioned in the evidence."

H.R.'s contention is that Instruction 11 constituted an impermissible deviation from

MAI 4.01 in that the words "on plaintiff's claim of a loan of money to defendants and for the payment thereof from defendants" were substituted for "on plaintiff's claim for damages" and that the addition of the words "plaintiff loaned to defendants which defendants have not paid to plaintiff under the agreement mentioned in the evidence" in place of "the occurrence mentioned in the evidence" was error.

H.R. voices no objection to Instruction No. 9 which reads: "Instructions 9 through 11 and general instructions 1 through 5 apply to the claim of plaintiff H.R. Owen *of a loan of money to defendants and for the payment thereof from defendants.* Use Verdict B to return your verdict on this claim." (Emphasis supplied). Notes on Use 4 under MAI 2.05 states that after the phrase "apply to the claim of" the "instruction should contain a descriptive phrase which describes and identifies the claim submitted by this particular package. . . . See MAI 2.00 General Comment for a discussion and for examples of the appropriate identifying phrase." Paragraph F under MAI 2.00 provides, in part, that "MAI 2.05 . . . and the Verdict form should include a descriptive phrase which describes and identifies the claim which is being submitted" to the jury.

As previously seen, Count II of H.R.'s petition was predicated on an alleged debt, i.e., a loan of money by H.R. to Harley and Mary which they had not repaid as agreed. This is exactly how H.R.'s claim is described in Instruction No. 11. The basic idea of "debt" is a legal obligation which arises from a contract, express or implied, entitling the creditor unconditionally to receive from the debtor a certain sum of money which the debtor is under a duty to pay. 26 C.J.S. Debt, at p. 3. The term "Damages" used in MAI 4.01 is to be distinguished from "debt" and an action for damages is not an action to recover an exact debt. 25 C.J.S. Damages § 1 b., at p. 614. How the modification of MAI 4.01 in Instruction No. 11 to describe the obligation sued on as a "debt", which it allegedly was, instead of "damages" was prejudicial to H.R. wholly escapes us. Webster's Third New International Dictionary, Unabridged, p. 1561, defines "occurrence" as "something that takes place; *esp:* something that happens unexpectedly and without design." The averred debt for which H.R. sued did not amount to an "occurrence". Therefore, substituting the description of the unpaid debt which H.R. claimed was due him instead of the word "occurrence" could not have been injurious to H.R. His sixth point relied on is denied.

We have heretofore denied H.R.'s seventh point when it was considered in conjunction with his second point.

H.R.'s eighth point relied on claims Instruction No. 13 offered by Mary on her counterclaim for abuse of process and given by the court constituted reversible error. The instruction reads: "Your verdict must be for defendant Mary Owen if you believe: First, plaintiff instigated judicial proceedings against defendant Mary Owen for an ulterior purpose, and Second, in so doing plaintiff committed a willful act in the use of the process not proper in the regular conduct of the proceeding, and Third, defendant Mary Owen was thereby damaged."

The claim of error lies in H.R.'s argument that the phrase "in so doing", which was placed at the commencement of the instruction's second paragraph, referred to the first paragraph charging him with instituting judicial proceedings against Mary with an ulterior motive. As observed in Prosser, The Law of Torts, 3d Ed., § 115, p. 876, the gravamen of the tort of abuse of process is not commencing an action and causing process to issue without justification but misusing process for an end other than that which it was designed to accomplish. The only thing of importance is the purpose for which the process is used once it has issued. This being so, H.R. says the instruction was error for requiring a finding that the proceedings were instituted with an ulterior purpose.

Elements of abuse of process are (1) an ulterior purpose and (2) a willful act in the use of process not proper in the

regular conduct of the proceeding. *Moffett v. Commerce Trust Company,* 283 S.W.2d 591, 599 (Mo.1955). The instruction required a finding on both elements. Although the kernel of the action does not repose in why it was started, but rather in the purpose for which it was used, if the commencement reason and the purpose for which it was employed are identical, this should not absolve H.R. from liability. The fact, if so, that Mary cast a burden upon herself greater than required does not create reversible error. *Griggs v. Riley,* 489 S.W.2d 469, 474 (Mo.App.1972). The instruction must simply not be otherwise unfavorable to H.R. and Instruction No. 13 was not. *Joly v. Wippler,* 449 S.W.2d 565, 569 (Mo.1970); *Coffer v. Paris,* 550 S.W.2d 915, 916–917 (Mo.App.1977). H.R.'s eighth point is denied.

■ Under Mary's counterclaim for abuse of process damages, the court nisi gave the following as Instruction No. 14: "If you find the issues in favor of defendant Mary Owen on her claim for damages, then you must award defendant Mary Owen such sum as you believe will fairly and justly compensate defendant Mary Owen for any damages you believe she sustained as a direct result of the conduct of plaintiff H.R. Owen as submitted in Instruction No. 13 for which you find plaintiff H.R. Owen liable." In his ninth point relied on H.R. claims that substituting "conduct of plaintiff H.R. Owen as submitted in Instruction No. 13 for which you find plaintiff H.R. Owen liable" for "occurrence" was an impermissible deviation from MAI 4.01 and constituted reversible error. However, there was evidence of more than a single event or "occurrence" (67 C.J.S. Occurrence, p. 198) forming the basis of Mary's claim, i.e., (1) H.R.'s acceptance of $20,000 belonging jointly to Harley and Mary on the eve the dissolution suit was filed to divert it from consideration as marital property in that action, (2) H.R.'s claim of a constructive trust in his favor of bank stock issued to Harley and Mary years before the dissolution action was commenced and (3) H.R.'s claim of over $33,000 due him as a loan via rents received by Harley and Mary at times differing from (1) and (2). Obviously the things concerned in the counterclaim was not an "occurrence" but a cluster of conduct on H.R.'s part happening at different times. As seen in *Fletcher v. Cummings,* 532 S.W.2d 890, 891 (Mo.App.1976), "The Notes on Use to MAI 4.01 warn of using the word 'occurrence' where, as here, there is evidence of different occurrences: '... In such cases counsel will need to substitute some descriptive term ....'" That is exactly what counsel did here. H.R.'s ninth point is denied.

We have heretofore denied H.R.'s tenth point when it was considered in conjunction with his third point relied on, supra.

■ In the penultimate point relied on H.R., for a variety of reasons, claims the trial court erred in admitting Mary's Exhibit No. 4 into evidence and in failing to grant him a new trial because of such error. The difficulty with this point as succor to H.R. on appeal is that his motion for new trial contained no such claim of error directed specifically at Exhibit No. 4. We refuse to review the point. To do so would be unfair to the trial court as H.R., via his motion for a new trial, never gave it an opportunity to consider the allegations of error now advanced. *Schneider v. Finley,* 553 S.W.2d 727, 732[14] (Mo.App.1977); *Rotert v. Peabody Coal Company,* 513 S.W.2d 667, 676[3] (Mo.App.1974), 75 A.L.R.3d 755, 765; Rules 78.07 and 84.13, V.A.M.R. Because this point was not properly preserved for review, it will not be considered.

■ In toto, H.R.'s twelfth and final point: "The trial court erred in overruling [H.R.'s] motion for new trial as to all issues because a new trial is required not only as to [H.R.'s] claims but as to defendant Mary Owen's counterclaim in that the primary issue involved under defendant Mary Owen's counterclaim was the propriety of [H.R.] filing his petition and the jury's decision as to the merits of [H.R.'s] claims of necessity influenced their decision on defendant Mary Owen's counterclaim." This writer confesses complete inability to comprehend the point. Of course the primary

issue in Mary's counterclaim involved the propriety vel non of H.R.'s suit and the jury's decision thereon would, of necessity, influence its determination of the counterclaim. In most every case tried, the evidence brings into esse several issues the jury must resolve and it is only natural that its determination of particular issues in a certain way will influence its resolution of others. H.R.'s point is augmented by argument predicated upon hypothecations as to what might have happened if the jury had returned verdicts different than it did and what may have occurred if the trial court had granted him a new trial. This is reminiscent of and as plausible as the Ozarker's speculation that "if the dog hadn't stopped to scratch, he'd have caught the rabbit."

Judgment affirmed.

FLANIGAN, P.J., and GREENE, J., concur.

PREWITT, J., recused.