48 F.3d 341
 41 Fed. R. Evid. Serv. 960
 Ted KRAKOVER, individually and as trustee of the Ted
Krakover Living Trust; Tom Krakover; individually and as
trustee of the Ted Krakover Living Trust; Karen Krakover;
Gay Goldenberg; Larry Goldenberg, Appellees,
v.
Jack MAZUR; Ronald Raben, Appellants,
Lynn Mazur; Gail Raben, Defendants.
Ted KRAKOVER, individually and as trustee of the Ted
Krakover Living Trust; Tom Krakover, individually and as
trustee of the Ted Krakover Living Trust; Karen Krakover;
Gay Goldenberg; Larry Goldenberg, Appellants,
v.
Jack MAZUR; Ronald Raben, Appellees,
Lynn Mazur; Gail Raben, Defendants.
 Nos. 94-2239, 94-2242.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 12, 1994.
Decided Feb. 23, 1995.
 
 Mark G. Arnold, St. Louis, MO, argued (Alan E. Popkin, on the brief), for appellant.
 Joseph F. Devereaux, Jr., St. Louis, MO, argued, for appellee.
 Before MAGILL and BEAM, Circuit Judges, and PIERSOL,* District Judge.
 MAGILL, Circuit Judge.
 
 
 1
 Jack Mazur and Ronald Raben, both former Missouri lawyers, appeal from the district court's[1] grant of judgment as a matter of law on their abuse of process counterclaim against Ted and Tom Krakover, who were the plaintiffs below. Mazur and Raben argue that they made a submissible case of abuse of process because the Krakovers initiated and pursued an unrelated claim that Mazur and Raben charged an excessive fee in order to "extort" payment of unenforceable partnership debts by Mazur and Raben. The Krakovers cross-appeal, claiming the district court erred in excluding evidence of Mazur's and Raben's "disbarment" and in giving a jury instruction that placed the burden of proof of the reasonableness of the charged fee on the Krakovers. Finding neither error nor abuse of discretion, we affirm on all issues.
 
 I. BACKGROUND
 
 2
 Although the dealings of the parties to this appeal are complicated, the essential facts underlying this case are not. Viewed in a light most favorable to Mazur and Raben, the evidence establishes the following scenario.
 
 
 3
 Ted and Tom Krakover are father and son. The Krakover family owned about two-thirds of the stock of Tab Manufacturing, a company that sold "Buffalo" brand tools. During the mid-1980s, the Krakovers began to consider divesting their interest in Tab. The St. Louis law firm of Mazur, Raben, Breece, Frankel, Kaiser & Jones represented the Krakovers in relation to the sale. The Krakovers considered an initial public offering, but this alternative was financially unattractive. Mazur intervened and found a private buyer who was willing to buy Tab on terms more favorable to the Krakovers than those obtained in a public offering. The Krakovers received $26.4 million from the sale, a sum substantially larger than they would have obtained through the contemplated public offering. Understandably delighted, Ted Krakover offered Mazur and David Jones, one of Mazur's partners, a $1 million bonus each, in addition to the $363,000 in legal fees to be paid to the Mazur Raben law firm. The bonus and fees were transferred to the firm and distributed by the firm in accordance with Ted Krakover's wishes.
 
 
 4
 Unfortunately, the sale of Tab was not the only occasion for interaction between Mazur, Raben and the Krakovers. Between 1985 and 1987, the Krakovers invested in several real estate projects with Mazur and Raben. In 1987, the Krakovers, Mazur, Raben and Jones invested in a real estate partnership known as DeBaliviere Place. Ted Krakover obtained a loan from the Cass Bank in St. Louis to fund the project.
 
 
 5
 In 1989, the Krakovers advised the other partners that they (the Krakovers) would no longer fund the Cass Bank loan. Mazur and Raben were unable to provide the necessary funding, so they exchanged their shares in the partnership for an agreement indemnifying them from any further liability to Cass Bank. Jones remained a partner in DeBaliviere Place. Ultimately, the project failed and Cass Bank made a demand on all the partners to pay the loan. Jones paid, but Mazur and Raben stood on the indemnification agreements. Cass Bank filed a suit against all the partners in Missouri state court which is currently awaiting retrial. See Cass Bank & Trust Co. v. Mestmann, 888 S.W.2d 400 (Mo.Ct.App.1994).
 
 
 6
 After Cass Bank made the demand for payment, Mazur and Ted Krakover had a conversation in which Krakover threatened to sue over "all kinds of matters" if Mazur did not honor what Krakover termed his "obligation." Raben had a similar conversation with Krakover. At trial and in deposition, the Krakovers candidly admitted that the DeBaliviere Place dispute was "part of" the reason for the suit. The suit filed by the Krakovers consisted of five claims, in which they alleged that:
 
 
 7
 (1) acceptance of the $2 million bonus breached Mazur's and Raben's fiduciary duty;
 
 
 8
 (2) Mazur and Raben breached fiduciary duties in their dealings with the Krakovers (including DeBaliviere Place);
 
 
 9
 (3) Mazur and Raben violated RICO by the actions alleged in claims (1) and (2);
 
 
 10
 (4) the Krakovers were entitled to declaratory judgment in connection with the indemnity agreements on the Cass Bank loan; and
 
 
 11
 (5) the Krakovers were entitled to declaratory judgment setting aside certain stock transfers made by Mazur and Raben as fraudulent.
 
 
 12
 The Krakovers filed an amended complaint containing only the first and fifth claims, and Mazur and Raben counterclaimed, alleging that the Krakovers' suit was an abuse of process. The case proceeded to trial on the claim for a refund of the bonuses and on the counterclaim. One of the main issues at trial was the reasonableness of the fee/bonus paid to the Mazur Raben law firm. The jury returned a verdict for Mazur and Raben on both the Krakovers' claim and on the counterclaim. The district court granted judgment as a matter of law to the Krakovers on the abuse of process counterclaim. The Krakovers voluntarily dismissed their fifth claim, and both parties appeal.
 
 II. DISCUSSION
 
 13
 This set of appeals presents four issues. The appeal by Mazur and Raben requires us to decide (1) whether the district court properly granted judgment as a matter of law to the Krakovers on Mazur and Raben's abuse of process counterclaim; and (2) whether the district court properly granted judgment as a matter of law to the Krakovers on the issue of punitive damages for abuse of process. The cross-appeal by the Krakovers also presents two issues: (1) whether the district court abused its discretion when it excluded evidence of Mazur's and Raben's voluntary surrender of their attorney's licenses; and (2) whether the district court erred in refusing to give a jury instruction placing the burden of proof as to the reasonableness of Mazur and Raben's fees on defendants Mazur and Raben. We address each issue in turn.
 
 
 14
 A. Judgment as a matter of law on the abuse of process counterclaim
 
 
 15
 We review the district court's grant of judgment as a matter of law de novo, viewing the evidence in a light most favorable to Mazur and Raben. White v. Pence, 961 F.2d 776, 779 (8th Cir.1992). Missouri law governs this diversity case. Missouri law on abuse of process is well established:
 
 
 16
 'A pleading alleging abuse of process must set forth ultimate facts establishing the following elements: (1) the present defendant [the Krakovers] made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted.'
 
 
 17
 Ritterbusch v. Holt, 789 S.W.2d 491, 493 (Mo.1990) (en banc) (quoting Stafford v. Muster, 582 S.W.2d 670, 678 (Mo.1979) (en banc)). These elements are frequently summarized as (1) a willful act of using process (2) for a collateral purpose. See, e.g., Wells v. Orthwein, 670 S.W.2d 529, 532-33 (Mo.Ct.App.1984). As long as a plaintiff is seeking the remedy requested, his bad motives for pursuing the suit are irrelevant. Kopp v. Franks, 792 S.W.2d 413, 424 (Mo.Ct.App.1990).
 
 
 18
 The evidence introduced at trial establishes that the Krakovers initiated their lawsuit in part to obtain redress for losses incurred in various real estate deals, including the DeBaliviere Place deal. J.A. at 96A, 102; Trial Tr. at 145-46. However, the original complaint included three claims relating to the DeBaliviere Place deal (Counts 2, 3, and 4). The Krakovers did not bring the suit for a "collateral" purpose. Rather, their purpose (to obtain redress for the DeBaliviere Place losses and other losses) was discernible from the face of the original pleadings, which requested precisely this relief. Thus, because the Krakovers' initial complaint contained claims for relief from the DeBaliviere Place losses, we agree with the district court that the "true purpose" of their suit was contained in the pleading, and their desire for relief relating to DeBaliviere Place is not a collateral purpose. Guirl v. Guirl, 708 S.W.2d 239 (Mo.Ct.App.1986) (abuse of process where "the true purpose of [the] petition is not contained within the pleading").
 
 
 19
 The fact that the Krakovers dropped the claims relating to DeBaliviere Place from their amended complaint does not transform their original purpose for bringing the dropped counts into a collateral purpose. Rather, the decision to drop some counts was nothing more than "institut[ing] a lawsuit and pursu[ing] it to its authorized conclusion." Wells, 670 S.W.2d at 534. Because the evidence produced by Mazur and Raben indicates only that the Krakovers had several claims that they pursued to completion, no rational trier of fact could have found the requisite "improper purpose." Thus, judgment as a matter of law in favor of the Krakovers was appropriate.
 
 
 20
 Mazur and Raben rely upon Guirl v. Guirl, 708 S.W.2d 239 (Mo.Ct.App.1986). In Guirl, the original defendant bought stock in a family business on credit, secured by a collateral security agreement. The original plaintiff sought to foreclose her security interest, alleging breach of the security agreement. The original defendant tendered full payment, but the tender was refused and foreclosure pursued. The Guirl court found that the continued prosecution of the foreclosure action was an abuse of process because the tender of full payment was a tender of all potential relief that the plaintiff could have obtained. Guirl is distinguishable. In Guirl, the plaintiff had no possible legitimate reason for maintaining the suit, since she had already refused all requested relief. The facts in Guirl reveal that a battle for control of the family business was the sole reason for the suit. Id. at 245. In this case, unlike Guirl, there is no single illegitimate purpose that is the sole purpose of the action.[2] Moreover, there is no indication in Guirl that any colorable claim for control of the business was presented. The Guirl court observed that "neither [original] plaintiff ... offered evidence of any ground on which the court could have removed [original] defendant ... as a trustee." Guirl, 708 S.W.2d at 246.
 
 
 21
 B. Judgment as a matter of law on issue of punitive damages
 
 
 22
 for abuse of process
 
 
 23
 As discussed above, the evidence viewed in a light most favorable to Mazur and Raben establishes only that the Krakovers filed a lawsuit to enforce their rights and pursued it to its natural conclusion. Thus, the improper purpose and improper use of process that are necessary to give rise to tort liability for abuse of process are absent, and punitive damages are unwarranted. We find no error in the district court's grant of judgment as a matter of law on the issue of punitive damages.
 
 
 24
 C. Exclusion of evidence of voluntary surrender of attorney's licenses
 
 
 25
 The district court granted Mazur and Raben's motion in limine to exclude evidence of their voluntary surrender of their licenses to practice law in Missouri. The trial court gave two reasons for granting the motion: (1) that because the surrender was voluntary, it was "unclear exactly what prompted" it; and (2) that the "disbarment," which occurred on March 13, 1990, was too far removed from the 1986 representation to be relevant. We review for abuse of discretion. United States v. Southwest Bus Sales, Inc., 20 F.3d 1449, 1457-58 (8th Cir.1994); United States v. Carpenter, 11 F.3d 788, 789 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1570, 128 L.Ed.2d 214 (1994).
 
 
 26
 We hold that the district court acted within its discretion in excluding the evidence because it was irrelevant, as it did not make any material fact more or less likely. The surrender does not make the unreasonableness of the fee more likely by undermining Mazur's and Raben's reputations. The surrender was not until four years after the fee was charged and paid. Thus, regardless of the reasons for the surrender, it could not have affected Mazur's and Raben's reputations at the time of the original 1986 transaction. See 1 McCormick on Evidence Sec. 185 n. 10 (1992) (collecting cases of temporal remoteness). Moreover, because the record does not indicate why Mazur and Raben surrendered their licenses,[3] we cannot infer the existence of any allegations that would negatively impact their reputations.
 
 
 27
 Nor does the voluntary surrender make the unreasonableness of the fee more likely by providing evidence of diminished ability. First, because the surrender was voluntary, and only the fact of the surrender was offered, no negative inference may be drawn. Second, even if the voluntary surrender is viewed as a disbarment, such a disbarment may occur for any number of reasons, and many of these reasons have nothing to do with the ability of the lawyer. Finally, even if Mazur and Raben were disbarred because they became less than competent in 1990, the record provides no basis to believe that they suffered this disability in 1986. Accordingly, we find no abuse of discretion in the district court's decision to exclude this evidence.
 
 
 28
 D. Burden of proof as to reasonableness of attorney's fees
 
 
 29
 The Krakovers argue that the district court improperly instructed the jury that they (the Krakovers) bore the burden of proof as to the reasonableness of the fee charged by Mazur and Raben. The Krakovers claim that the burden of proof as to reasonableness is on the lawyers, whether the lawyers are plaintiffs or defendants. However, the cases cited by the Krakovers simply do not establish that a defendant attorney bears the burden to prove his fee reasonable in a civil suit by a former client to recover the already-paid fee. Jo B. Gardener, Inc. v. Beanland, 611 S.W.2d 317 (Mo.Ct.App.1980), and Morton v. Forsee, 249 Mo. 409, 155 S.W. 765 (1913) (en banc), were cases in which attorneys, or their representatives, were plaintiffs seeking to recover fees from nonpaying former clients. Thus, these two cases are consistent with the more general proposition that the plaintiff bears the burden to prove all elements of his claim. Anchor Centre Partners v. Mercantile Bank, 803 S.W.2d 23, 30 (Mo.1991) (en banc); see Metts v. Clark Oil & Ref. Co., 618 S.W.2d 698, 704 (Mo.Ct.App.1981). In re Conrad, 340 Mo. 582, 105 S.W.2d 1 (1937) (en banc), is a disciplinary case that simply does not apply. We find no error in the district court's instruction.[4]
 
 III. CONCLUSION
 
 30
 We conclude that Mazur and Raben failed to demonstrate that the Krakovers acted primarily for an improper collateral purpose. Thus, they failed to establish an essential element of the cause of action for abuse of process, and judgment as a matter of law was properly granted to the Krakovers. Because judgment as a matter of law as to liability for abuse of process was proper, so was the directed verdict on the punitive damages for abuse of process.
 
 
 31
 We also believe that the exclusion of the evidence of Mazur's and Raben's voluntary surrender of their attorney's licenses was not an abuse of discretion, as the evidence was irrelevant. We further hold that the jury instruction given by the district court correctly states the burden of proof.
 
 
 32
 We find the remaining arguments made by the parties to be meritless. Accordingly, the judgment of the district court is in all respects affirmed.
 
 
 
 *
 THE HONORABLE LAWRENCE L. PIERSOL, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 Mazur and Raben also rely upon Owen v. Owen, 642 S.W.2d 410 (Mo.Ct.App.1982). In Owen, H.R. Owen filed suit against Harley and Mary Owen (who were in the process of obtaining a divorce). H.R. offered to dismiss the suit if Mary would settle the divorce action on Harley's terms. Owen is distinguishable from the instant appeal because Harley had no colorable claim that could force Mary to settle. However, the Krakovers have a colorable claim to the DeBaliviere Place losses (i.e., a claim that the indemnification agreement was void and procured by a breach of fiduciary duty). Thus, in Owen, H.R. was trying to force Mary to do something that she "could not be legally forced to do." Owen, 642 S.W.2d at 414. Such is not the case in this appeal
 
 
 [3]
 For the reasons discussed, we grant Mazur and Raben's motion to strike
 
 
 [4]
 Mazur and Raben cite Atlantic Permanent Federal S & L Ass'n v. American Casualty Co., 839 F.2d 212, 218 (4th Cir.), cert. denied, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988), as recognizing a purported "general rule" that payment of a fee creates a presumption that the fee was reasonable. However, Atlantic involved a completely different issue of the burden of production as to the reasonableness of payments made under insurance policies