**CONTINENTAL CABLEVISION, INC.,
Plaintiff and Defendant in
Counterclaim,**

**v.**

**STORER BROADCASTING COMPANY,
Defendant and Plaintiff in
Counterclaim.**

**Civ. A. No. 80–2929–S.**

United States District Court,
D. Massachusetts.

Dec. 31, 1986.

---

Walter R. May, Peabody and Arnold, Boston, Mass., for Continental Cablevision, Inc.

Edward F. McLaughlin, Jr., Nutter, McClennen & Fish, and Peter Resnik, McDermott, Will & Emery, Boston, Mass., for Storer Broadcasting Co.

## MEMORANDUM AND ORDER ON CONSOLIDATED PRETRIAL MOTIONS

SKINNER, District Judge.

This litigation began in 1980, when Continental Cablevision, Inc. ("Continental") filed suit in this court against Storer Broadcasting Company ("Storer") alleging, in essence, that Storer defamed Continental in Missouri in order to prevail in a cable television licensing competition which was to determine which firm would receive a license to operate a cable television franchise in Florissant, Missouri. I granted summary judgment to Storer on Cablevision's claims by Memorandum and Order dated December 28, 1984. That Memorandum relates the details of the underlying dispute.

Storer has filed counterclaims against Cablevision for defamation and abuse of process. The counterclaims allege that Continental knew its suit was baseless, and that the suit was filed with the purpose of impugning Storer's reputation for corpo-

rate fair dealing and honesty in the hope that this blow to Storer's reputation would improve Continental's competitive position vis-a-vis Storer in cable television licensing proceedings in Missouri and elsewhere. The parties are now preparing for trial on Storer's counterclaims, and have submitted these consolidated pretrial motions.

I have followed the parties' designation and numbering of these consolidated motions. I shall address them in numerical order, except for Continental's motion regarding choice of law and its motion to dismiss Storer's abuse of process counterclaim, which take logical precedence over the other motions.

*Continental's Pretrial Motions*

IV. *Motion Pursuant to Fed.R.Civ.P. 56 That The Law of Massachusetts Applies to All Issues of This Case*

The parties of course agree that Massachusetts choice of law rules apply. *Klaxon v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). They also both agree that while the traditional rule of *lex loci deliciti* no longer strictly controls choice of law questions in tort suits, *Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 450 N.E.2d 581 (1983); *Pevoski v. Pevoski*, 371 Mass. 358, 358 N.E.2d 416 (1976), it still provides a useful rule for most multi-state torts. *Pevoski, supra,* at 359–60, 358 N.E.2d 416; *Schulhof v. Northeast Cellulose, Inc.*, 545 F.Supp. 1200, 1203 (D.Mass.1982). Finally, the parties agree that the current Massachusetts procedure is to "determine the choice-of-law question by assessing various choice-influencing considerations." *Bushkin Associates, Inc. v. Raytheon Co.*, 393 Mass. 622, 631, 473 N.E.2d 662 (1985). In evaluating the relative importance of these various considerations, the Restatement (Second) of Conflict of Laws (1971) is "[o]ne obvious source of guidance," *id.*, but Massachusetts courts do not "mechanical[ly]" follow the Restatement. *Emery Corp. v. Century Bancorp., Inc.*, 588 F.Supp. 15, 18 (D.Mass.1984); *Bushkin, supra.*

Beyond these general propositions, the parties differ widely. They disagree as to the specific rules to be applied, the manner in which those rules should be applied, and the relative importance of various contacts. These differences should not be surprising given the Supreme Judicial Court's acknowledgment that "some vagueness in the formulations applied is probably unavoidable." *Bushkin, supra,* 393 Mass. at 632, 473 N.E.2d 662.

Although Continental chose Massachusetts as the forum in which to bring its original action, there is no doubt that the dispute which gave rise to this litigation occurred in Missouri. The licensing competition at issue was in Missouri, and the statements by Storer upon which Continental based its original claims were made in Missouri. Any effect that those statements had occurred in Missouri as well. Both parties agreed that Missouri law applied to Continental's claims.

Continental argues that Massachusetts law applies to the Storer counterclaims because those claims are based on Continental's lawsuit which was filed and prosecuted in Massachusetts. In particular, Continental argues that the alleged defamatory statement was the lawsuit itself, so that the place of the defamation was Massachusetts, and Massachusetts law should therefore apply to the defamation claim. Furthermore, it argues that since the process being abused was Massachusetts process, and Massachusetts is the state which cares most whether its process is abused, Massachusetts law should apply to the abuse of process claim as well.

Storer claims that Missouri law applies. Storer points to the original dispute between the parties, which occurred in Missouri. Storer claims that the purpose of Continental's alleged defamatory lawsuit was to affect the cable licensing process in Missouri. Moreover, Storer claims that to effect this illicit end, Continental principally *published* the defamation in Missouri. Finally, Storer claims that though Massachusetts process was abused, the actual abuse of process occurred in Missouri

where Continental attempted to make capital out of the filing of its lawsuit.

■ I agree with Storer's characterization of the dispute as centering in Missouri. Moreover, to the extent that Storer can prove its allegations, to allow Continental to choose the law by choosing where to defame Storer would itself constitute a kind of abuse of process. I think that it is necessary to prevent this kind of defendant's choice of forum, and I rule that Missouri law applies to both of Storer's counterclaims.

■ As my 1984 memorandum makes clear, until Continental filed its lawsuit in 1980, all events in the dispute occurred in Missouri. Massachusetts law is much more favorable to defamation (and abuse of process) defendants than Missouri law. Even so, Continental must have known that it was safe in filing in Massachusetts because, since the Missouri contacts were so overwhelming, and the Massachusetts contacts were nil except for Continental's residence, Missouri law was sure to apply to Continental's claims. If Storer is correct in its allegations, then Continental's decision to file in Massachusetts makes sense as an effort to minimize its potential counterclaim liability. This analysis is in fact confirmed by Continental's memorandum in support of its pretrial motions, which states that Continental expected Massachusetts law to apply. Memorandum of Continental Cablevision, Inc. In Support of Consolidated Pretrial Motions, at 20. Since Continental did not argue that Missouri law applies to *its* claims, the statement that Continental expected Massachusetts law to apply must mean that Continental was anticipating Storer's counterclaims. Plaintiff's right to choose the forum in which it wants to bring suit does not extend so far as to allow a party to control the choice of law to be applied to counterclaims against it.

Under Continental's theory, it could have filed suit in Alaska, as long as Storer did significant business in Alaska, if Alaska law regarding defamation and abuse of process was most pro-defendant, and a federal court sitting in Alaska would have to apply Alaska law to Storer's counterclaims even though the transaction and every single event prior to the lawsuit—and most of the events *after* the filing of the lawsuit— took place in Missouri. Filing a suit in a particular forum in order to preempt choice of law questions regarding potential counterclaims hardly creates the kind of justified expectation on the part of Continental that this court should protect. That Continental is resident in Massachusetts does not, by itself, make Continental's argument correct. *Cohen v. Hathaway*, 595 F.Supp. 579 (D.Mass.1984).

■ In a defamation action, the injury occurs where the defamatory statement is published. In a case of multi-state publication, the Restatement suggests that either the law of the state of residence of the plaintiff, or the law of the state "where the defamatory communication caused plaintiff the greatest injury to its reputation" should apply. Restatement, *supra*, § 150. Continental's alleged defamation of Storer was not necessarily published where the lawsuit was filed; publication occurs when third parties are made aware of the defamatory statements. While Continental filed a press release notifying the press of the suit in Massachusetts, it also sent letters to various residents of Missouri with some control over the cable licensing process in an attempt to affect cable licensing in Missouri. Therefore, the alleged defamatory statements were published in Missouri as well. Storer has plausibly alleged that the place of greatest injury to it occurred in Missouri. Under the Restatement guidelines for multi-state defamations, Missouri law should apply.

Even if this action is not seen as one of multi-state defamation, Missouri could be seen as the place of publication, for the reasons given above. While Storer alleges that Continental hoped to harm Storer's reputation nationwide, Storer's principal allegation is that Continental hoped to influence the cable licensing process in Missouri, and that Continental used the pendency of its lawsuit to that end by informing various Missouri decision makers of the

lawsuit. Therefore, the specific publication of the alleged defamatory statement to those Missourians is relevant for choice of law purposes.

"The place where the relationship, if any, between the parties is centered," is an important factor in choice of law questions in tort suits. Restatement, *supra,* § 145(2)(d). While Massachusetts has not, as noted, adopted the Restatement in all its particulars, I find that Massachusetts courts would, in these circumstances, under their "choice-influencing" factors approach, give great weight to the fact that the parties' relationship was overwhelming in Missouri. Therefore, Missouri law applies to the defamation counterclaim.

Although it is a closer question, I find that Missouri law should apply to Storer's abuse of process counterclaim as well. To the extent that Continental's suit was abusive, it abused *Massachusetts* process, not Missouri process. Massachusetts certainly has the strongest interest in preventing abuse of process in Massachusetts courts. However, the reason Continental seeks to apply Massachusetts law is presumably that it finds Massachusetts law to be more lenient to abuse of process defendants than Missouri law. According to Storer's theory, Continental's decision to file in Massachusetts was itself part of Continental's abuse of process. If Storer is correct, then to allow Continental to prevail on its choice of law argument would be to reward Continental's abuse of process.

Massachusetts has not ruled on the proper choice of law in an abuse of process action. The Restatement position is that

The rights and liabilities of the parties for malicious prosecution or abuse of process are determined by the local law of the state where the proceeding complained of occurred, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement, *supra,* § 155. The comment to the Restatement explicates the situations in which deviation from the baseline rule might be appropriate.

On rare occasions, a state other than that where the proceeding complained of occurred will be that of most significant relationship and therefore the state of the applicable law.... This may be so when the proceeding is begun in one state for the purpose of affecting a transaction in another state and when the latter state has the most significant relationship to the transaction sought to be affected and to the parties.

*Id.,* comment b.

The usual practice will therefore be to apply the law of the state where the process was instituted. However, by the addition of the caveat, the Restatement makes clear that this will not always be proper. In my opinion, this is as clear a case as we are likely to see for deviation from the ordinary rule in accordance with the last clause of the section. Therefore, Missouri law applies to the abuse of process claim as well as the defamation claim.

■ Missouri law also applies to damages issues, including whether punitive damages may be imposed. While no Massachusetts decision is directly on point, the general rule in Massachusetts is to apply the damages law of the state whose substantive law applies. *Jackson v. Anthony,* 282 Mass. 540, 546, 185 N.E. 389 (1933). Moreover, this court has ruled that the damages provisions of the state whose substantive law applied should govern in defamation actions. *O'Reilly v. Curtis Pub. Co.,* 31 F.Supp. 364 (D.Mass.1940). In *O'Reilly,* the defendant sought to have Massachusetts law applied to damages issues because Massachusetts, in 1940 as well as now, prohibited the recovery of punitive damages in defamation actions. This court rejected that argument.

The Restatement also suggests that damages law should follow substantive law, unless there are strong reasons otherwise. Restatement, *supra,* § 171. That Massachusetts strongly believes its punitive dam-

ages position to be correct is not dispositive. Presumably, both states feel their respective positions to be correct; else they would change them. "Both the decision to allow punitive damages and the decision to disallow punitive damages must be accorded great respect." *Freeman v. World Airways, Inc.*, 596 F.Supp. 841, 848 (D.Mass. 1984).

■ For all the reasons given above, Missouri law also applies to issues of privilege as well.

The parties' relationship centered in Missouri. Storer's allegations are that defamations occurred which were published principally in Missouri, and that process was abused principally in Missouri—that the injury which Storer alleges Continental hoped to inflict would be felt in Missouri. If Storer's allegations are correct, then it is reasonable to draw the inference that Continental chose to file in Massachusetts in order to preempt choice of law questions on an expected counterclaim by Storer. Therefore, the fact that Massachusetts is the forum carries less weight than it otherwise might in choice of law issues. Missouri law applies to both the defamation claim and the abuse of process claim, including issues of privilege and punitive damages.

## II. *Motion Under Fed.R.Civ.P. 12(d)* [1] *To Dismiss Counterclaim for Failure to State a Claim of Abuse of Process*

Continental has moved to dismiss Storer's abuse of process counterclaim for failure to state a claim. In ruling on motions to dismiss,

[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.... Moreover, ... the allegations of the complaint should be construed favorably to the pleader.

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 [78 S.Ct. 99, 102, 2 L.Ed.2d 80] (1957).

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973).

Since I have already ruled, *supra*, that Missouri law applies to Storer's counterclaims, the question raised by this motion is whether the counterclaim states a claim for abuse of process under Missouri law.

The elements of a claim for abuse of process are: (1) an illegal, improper, perverted use of the process that is not warranted or authorized; (2) an improper purpose in exercising such illegal, improper or perverted use of process; and (3) resulting damages.

*Guirl v. Guirl*, 708 S.W.2d 239, 256 (Mo. App.1986).

Continental argues that an abuse of process plaintiff must establish either that the defendant co-opted the process in some way, such as in *Stafford v. Muster*, 582 S.W.2d 670 (Mo.1979) (in which the abuse of process defendants, after proceedings had begun against the abuse of process plaintiff, wrongfully had the abuse of process plaintiff jailed on a contempt charge) or that the abuse of process defendant used the fact of the commencement of proceedings in an attempt to coerce the abuse of process plaintiff in some way. Because I disagree with Continental's characterization of the Missouri requirements, Continental's motion to dismiss the abuse of process claim is denied.

■ When the Missouri decisions state that an abuse of process plaintiff must show "an illegal, improper, perverted use of the process," they are not requiring that further actions be taken with the context of the process itself. "The phrase 'use of process,' appearing in element (1) above,

---

**1.** Continental brings its motion under Rule 12(d) which is only procedural; in substance it is a motion under Rule 12(b)(6).

refers to some willful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process." *Stafford, supra* at 678. There is no suggestion in the cases that the "definite act" referred to in *Stafford* must be an act, such as attachment or contempt, sought by the abuse of process defendant *from the courts.* Rather, the reverse is true. The cases demonstrate that Missouri permits abuse of process actions where the abuse alleged occurred as part of an attempt by the abuse of process defendant, *outside of court,* to make wrongful collateral use of the fact that process had been instituted.

Moreover, while most of the abuse of process cases have involved an attempt by the abuse of process defendant to coerce the abuse of process plaintiff in some way, the Missouri courts have not utilized any language suggesting that they mean to limit abuse of process claims to coercive situations. They have used the more general language, "an illegal, improper, perverted use of the process." Indeed, in *Guirl,* a very recent Missouri abuse of process case, one of the abuse of process defendants had filed suit against the abuse of process plaintiff in an attempt to divest him of controlling interest in a certain corporation. There was no suggestion that any coercion was applied; the court stated that plaintiff had stated an abuse of process claim (and proved his case) when he demonstrated that the abuse of process defendants had filed suit against him for recovery of the balance due on some stock purchase notes, when they knew that the suit was baseless, and the purpose of the suit was to divest the abuse of process plaintiff of control of the corporation whose stock was represented by the stock purchase notes. *Id.,* at 245–46.

 Storer's allegations state a claim for abuse of process under Missouri law. Storer has alleged that Continental filed suit against Storer knowing its suit to be baseless (not in itself even a necessary allegation), with the purpose of affecting the competition for cable television licenses in Missouri and elsewhere. Storer further alleged that Continental took actions in Missouri and elsewhere, after the suit had been filed, such as notification of cable licensing decision-makers in Missouri and issuance of a press release announcing the suit, in furtherance of the improper purpose. In my opinion, Missouri courts would find that these allegations successfully state a claim for abuse of process. It certainly is no more improper or perverted to institute process in an attempt to coerce another party into taking certain actions than it is to institute process in the hope that an independent third party will respond to the process by taking some action that benefits the abuse of process defendant at the expense of the abuse of process plaintiff. Filing a baseless suit, and publicizing and pursuing that suit, for the purpose of gaining a competitive advantage, is an "improper, perverted" use of process.

## I. Motion for Construction of the Pleadings or Alternative Motion Pursuant to Fed.R.Civ.P. 15 for Leave to Amend

Continental has stated in the pretrial memorandum that it intends to assert various privileges, such as fair reporting, neutral reporting, the reply doctrine, and the privilege associated with litigation.[2]

In the first place, Storer is simply wrong in asserting that the pretrial memorandum was the first time at which Continental raised the issue of the privilege associated with the conduct of litigation. This precise issue of privilege was at the heart of my Memorandum and Order of December 22, 1983, denying Continental's motion for summary judgment on Storer's defamation counterclaim. While I denied Continental's

---

**2.** Storer has also sought to prevent Continental from raising the affirmative defense of truth. However, since I have determined that Storer is a public figure for the purposes of this case, *see infra,* it is clear that Storer has an affirmative burden to prove the falsity of Continental's statements. Storer concedes that this allocation of the burden is proper, given a finding that it is a public figure.

motion, it is clear that Continental had raised the issue at that time.

It is not so clear that the other defenses have been raised previously by Continental. Most of the other discussions of privilege to which Continental refers have either dealt with the judicial privilege, or have been connected to *Storer*'s claims of privilege regarding its statements in connection with Continental's original complaint charging Storer with defamation. Even so, I will allow Continental's motion for leave to amend its complaint to assert the affirmative defenses of privilege it has not yet asserted. Rule 15 states that leave to amend "shall be freely given when justice so requires." The Supreme Court has stated that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Even if Continental has not already previously asserted the other privileges as affirmative defenses, neither is it clear that the pretrial memorandum was the first mention of the privileges. Moreover, Storer has not demonstrated that allowing this motion will unfairly prejudice it, even though discovery has already closed.

### III. *Motion Precluding Reference at Trial to The Memorandum of This Court Dated December 28, 1984*

Continental moves to prevent any reference to my Memorandum and Order of December 28, 1984 in which I granted Storer's motion for summary judgment on Continental's complaint. Because both of Storer's counterclaims relate to Continental's original complaint, my order allowing summary judgment for Storer on Continental's complaint is certainly relevant to Storer's counterclaims. Nor, at this point, can I conclude that Continental would be unfairly prejudiced or that the jury would be confused by mention of the summary judgment order. F.R.E. 403. Of course, Continental will still be free at trial to raise any valid objection it may have to any particular use which Storer may attempt to make of the summary judgment order.

### V. *Motion That the Court Determine That Storer Must Prove by Clear and Convincing Evidence That Continental Published Any Defamatory Statements with Malice*

In this motion, Continental seeks a determination that Storer is a public figure as that term has been used in recent Supreme Court cases dealing with constitutional limitations on actions for defamation. *See, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). As our court of appeals has noted, Gertz "delineated three major classes of public figures." *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 588 (1st Cir.1980). Referring to *Gertz*, the Court outlined the three classes:

> The first included persons who have "assumed roles of especial prominence in the affairs of society", ... or who have achieved "pervasive fame or notoriety", ... as well as those who "occupy ... positions of ... persuasive power and influence", ... or are "pervasive[ly] involve[d] in the affairs of society".... Such persons are considered public figures for all purposes. A second class envisaged might consist of those who become public figures through no purposeful action, "but the instances of truly involuntary public figures must be exceedingly rare".... The third class, the relevant one for the purposes of this case, is constituted of persons who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved".... These persons are public figures for a limited range of issues. The Court gave guidance as to this category: "It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation."

*Id.*

The Court of Appeals went on to analyze briefly the post-*Gertz* Supreme Court

cases, and concluded that " 'A fairly high threshold of public activity is evidently necessary for a finding that a person has voluntarily plunged into a public controversy.' " *Id.*, at 589 (citing L. Tribe, *American Constitutional Law* 645 (1978)).

Rejecting the idea that the plaintiff in *Bruno & Stillman* was a public figure simply by virtue of being a corporation selling a product to the public, or that economic damage to reputation was in some way distinguishable from personal damage to reputation, *Bruno & Stillman* rejected any broad rule applicable to corporate defamation plaintiffs. Instead, the court "follow[ed] a more particularized approach." *Id.*, at 590.

The Court of Appeals rejected the argument that a corporation selling goods and services is a public figure with respect to statements concerning those goods and services. *Id.* The Supreme Court has held that it is not enough that the allegedly defamatory statement "involved expression on a matter of undoubted public concern." *Gertz, supra; Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 2944, 86 L.Ed.2d 593 (1985). Before the plaintiff may be required to prove malice, it must be shown that it thrust itself into a public controversy.

Storer contends that the controversy concerns its reputation for honesty and integrity. The controversy that counts, however, is whatever controversy existed before the issuance of the allegedly defamatory statement. *Hutchinson v. Proxmire,* 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411 (1979); *Wolston v. Reader's Digest Assn., Inc.,* 443 U.S. 157, 167–168, 99 S.Ct. 2701, 2707–08, 61 L.Ed.2d 450 (1979). This controversy concerned which company, Storer or Continental, would get the cable television franchise in Florissant, Missouri.

Operators of cable televisions systems have become a major factor in the dissemination of information, and much of the control of programming and responsibility for public service programming has devolved on the local licensing authorities. *See FCC v. Midwest Video Corporation,*

440 U.S. 689, 99 S.Ct. 1435, 59 L.Ed.2d 692 (1979); *Quincy Cable TV, Inc. v. FCC,* 768 F.2d 1434 (D.C.Cir.1985) *cert. den., National Association of Broadcasters v. Quincy Cable TV, Inc.,* — U.S. —, 106 S.Ct. 2889, 90 L.Ed.2d 977 (1986); *City of Los Angeles v. Preferred Communications,* — U.S. —, 106 S.Ct. 2034, 2037, 90 L.Ed.2d 480 (1986).

▮ Obtaining local licenses is the business of these litigants. They necessarily "thrust themselves" into the competition. Given the public importance of the licensing procedure, I conclude that Storer voluntarily thrust itself into a matter not only of public concern generally, but a matter which was a public controversy in Florissant, Missouri. Accordingly, Storer is a public figure and "may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz, supra* 418 U.S. at 342, 94 S.Ct. at 3008.

VI. *Motion Pursuant to Fed.R.Civ.P. 56 for a Determination That Storer Is Not Entitled to Recover Punitive Damages Under Counts I or II of Its Counterclaim*

### Abuse of Process

Continental has argued that Massachusetts law applies to the abuse of process counterclaim, and that, under Massachusetts law, punitive damages are not permitted. However, I have already ruled, *supra,* that Missouri law applies to the abuse of process counterclaim. Missouri permits awards of punitive damages in such cases. *Guirl, supra.* Continental's motion is denied as to the abuse of process claim.

### Defamation

▮ Missouri law also applies to the defamation counterclaim. *See, supra.* It is quite clear that Missouri law permits awards of presumed and punitive damages, *see Swafford v. Miller,* 711 S.W.2d 211 (Mo.App.1986); *Carter v. Willert Home Prod. Inc.,* 714 S.W.2d 506 (Mo.1986). Continental's suggestion that Missouri might

rule in the future that presumed and punitive damages are not available in defamation actions is completely without merit after *Carter.*

■■ Continental also argues that punitive damages are unconstitutional even after a finding of actual malice. This argument is also completely without merit. While it is true, strictly speaking, that Gertz only held that presumed and punitive damages were not permitted without a finding of actual malice, Gertz clearly implies that presumed and punitive damages are permitted if actual malice is found. Otherwise, as Storer points out, the Court could simply have held that presumed and punitive damages were unconstitutional in all defamation actions. Moreover, at least eight members of the Court either signed or joined an opinion in *Dun & Bradstreet* which either stated or assumed that punitive and presumed damages are available if actual malice is shown. "*Gertz* ... held that presumed and punitive damages were available under some circumstances." *Dun & Bradstreet, supra,* 105 S.Ct. at 2947 n. 7 (opinion for the Court by Justice Powell, joined by Justice O'Connor and Justice Rehnquist). "Given that proof [of malice], the usual damages were available, including presumed and punitive damages." *Id.,* at 2949 (opinion of Justice White). "The Court in *Gertz* specifically held that the award of presumed and punitive damages on less than a showing of actual malice is not a narrowly tailored means to achieve the legitimate state purpose...." (opinion of Brennan, joined by Justice Marshall, Justice Blackmun, and Justice Stevens). [*Id.,* at 2956].

Given the opinions in *Dun & Bradstreet,* Continental's position is clearly not existing law. Given the retreat from First Amendment concerns since *Gertz, see Bruno & Stillman, supra,* it is equally hard to see Continental's position as a good faith argument for a change in the law. Continental's position is at best untenable; it may, in fact, topple over the precipice of Rule 11.

VII. *Motion for a Determination That Storer Must Prove Actual Injury in Order to Prevail on Any Theory and Its Compensatory Damages Are Limited to Actual Injury Proved*

### Abuse of Process

As noted in the discussion of the motion to dismiss this counterclaim, proof of damage is an element of an abuse of process claim in Missouri. Continental also requests a ruling that Missouri does not permit recovery for damage to reputation in an abuse of process action. The Missouri cases do not explicitly say whether reputation damages are or are not recoverable in abuse of process actions.

The Restatement (Second) of Torts does not state what damages are recoverable in abuse of process actions. However, in the related action of Wrongful Use of Civil Proceedings, the Restatement provides that:

> When the essential elements of a cause of action for wrongful civil proceedings have been established, the plaintiff is entitled to recover for ...
>
> (b) the harm to his reputation by any defamatory matter alleged as the basis of the proceedings....

Restatement (Second) of Torts, § 681 (1977).

The Restatement explicates § 681(b) in the Comment. "In a word, the test is whether the defendant's pleadings are such that if not protected by the privilege of a litigant ... they would be actionable under the rules governing recovery for defamation."

Prosser confirms this result. Discussing abuse of process claims, he states that "[s]ome actual damage is necessary to the tort, but ... [o]nce the tort is proved, the damages recoverable are in general much the same as in cases of malicious prosecution." Prosser, *The Law of Torts,* § 121 (4th ed. 1971) (citations omitted).

Citing Prosser, the South Carolina Supreme Court permitted recovery for damage to reputation in an abuse of process

action. "Under the facts of the instant case at least some damage to the reputation of the plaintiff was a natural and probable consequence of the delicts of the defendant." *Huggins v. Winn-Dixie Greenville, Inc.*, 252 S.C. 353, 166 S.E.2d 297 (1969). The Court permitted reputation damages even though no specific proof was demonstrated.

■ I find that Missouri would permit recovery of reputation damages upon a finding that damage to Storer's reputation would be a natural consequence of any abuse of process committed by Continental.

### Defamation

■ Continental also moves for a determination that presumed damages are not available under Storer's defamation counterclaim. However, as I discussed *supra,* my reading of *Gertz* is that once a defamation plaintiff proves actual malice, he may recover presumed damages. A majority of the Supreme Court apparently reads *Gertz* the same way. *See supra; Dun & Bradstreet, supra.* Continental's motion is therefore denied.

### VIII. Motion Pursuant to Fed.R.Civ.P. 56 for A Ruling That Storer Is Not Entitled to An Award of Attorneys' Fees

Missouri permits the award of attorneys' fees in abuse of process actions. *Owen v. Owen*, 642 S.W.2d 410 (Mo.App.1982); *National Motor Club of Missouri, Inc. v. Noe*, 475 S.W.2d 16 (Mo.1972). This is the general rule. "Counsel fees incurred as an expense in attempting to protect oneself from an abuse of process may be a proper element of damage." 72 C.J.S. Process § 124(g) (1951). The rationale for this rule is made clear in *Owen,* where the court approved a jury instruction which stated "you must award defendant ... such sum as you believe will fairly and justly compensate defendant ... for any damages you believe she sustained as a direct result of the conduct of plaintiff ..." In other words, attorneys' fees are awarded in abuse of process claims precisely because the expense incurred in defending against a wrongful use of process is the most obvious proximate damage suffered by the abuse of process plaintiff.

■ Continental's cases are inapt. Those cases simply explain Missouri's general adherence to the American rule in which attorneys' fees are not usually recoverable. In the normal case, such as a personal injury or a contract action, attorneys' fees are not recoverable because the expense of *prosecuting* the action is not deemed to be part of the damage caused by the defendant. This is true in Missouri as well. Therefore, Storer cannot recover its attorneys' fees in prosecuting its counterclaim.

■ However, the attorneys' fees that Storer was required to pay in order to defend against Continental's defamation claim against it stand on different footing. Those fees are recoverable because they are an element of the damage caused to Storer by Continental's prosecution of Continental's defamation action. These fees were the direct result of Continental's alleged abuse of process, rather than being collateral to plaintiff's main case, as in most other actions. Continental's motion is denied.

### IX. Motion Pursuant to Fed.R.Civ.P. 56 to Preclude Evidence Regarding Alleged Increases in Insurance Premiums

Continental argues that Storer should not be permitted to introduce evidence regarding the link between Continental's suit against Storer and increases in Storer's insurance premiums. As Storer points out, Continental makes two arguments. First, Continental argues that the testimony of Mr. Gorecki, Mr. Gallagher and Mr. Pither, Storer's witnesses on this subject, would not be admissible because their testimony will be speculative and not supported by facts. The deposition testimony suggests that these witnesses may properly testify under Article VII of the Federal Rules of Evidence on the subject of the increase in

Storer's insurance premium increase. Continental is of course free to raise any proper objections to the testimony of these witnesses when they are on the stand, but under the liberal federal rules regarding expert witness testimony, I am not now prepared to exclude it totally.

Continental's second point is that the increase in insurance premiums is too inexact to be a proper element of damages. I agree with Storer that some uncertainty in an element of damages does not preclude its recovery. *Eastman Kodak v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). In any case, this part of the motion is also premature. It is the evidence which Storer will present at trial which will demonstrate whether or not Storer suffered increases in insurance premiums which are properly compensable items of damage under its counterclaims.

### X. *Motion to Exclude Increase in Insurance Premiums As An Impermissible Item of Damages*

 Continental's argument in this motion, which is otherwise difficult to distinguish from its previous motion, is that "public policy dictates that increased insurance premiums should not be recoverable." Continental's argument is that Storer's premium acts as an incentive to prevent Storer from committing torts which the insurance company will then have to pay to defend. Continental argues further that if recovery of insurance premium increases is permitted, this incentive will be lost. However, Continental either completely misunderstands the nature of the incentive provided by insurance premiums, or it is again testing the boundaries of Rule 11. The very point of Storer's counterclaims is that Storer did not commit any tort. If Storer can prove this at trial, then granting recovery for increases in insurance premiums does nothing to reduce Storer's incentives under the insurance contract. Continental's motion to exclude insurance premium increases as an item of damages is therefore denied.

### XI. *Motion for A Determination That Storer Has the Burden of Proving Actual Malice and Falsity of the Alleged Defamatory Statements*

Since I have already ruled that Storer is a public figure for the purpose of this case, it is clear that Storer has the burden of proving both falsity and actual malice. "A public figure plaintiff must show the falsity of the statements at issue in order to prevail on a suit for defamation." *Philadelphia Newspapers, Inc. v. Hepps*, —— U.S. ——, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986). This motion is therefore allowed.

### XII. *Motion to Reopen the Deposition of Robert Anderson*

The deposition of Robert Anderson was taken on September 10, 1986. Discovery closed in this case on September 30, 1986. On October 3, 1986, Continental received 11,000 pages of documents from a third party, Traveler's Insurance, which Continental claims would have assisted it in taking Anderson's deposition, and it moves that the deposition be reopened so that it can question Anderson concerning these documents.

 This motion is denied. Continental apparently waited until September 1986 to ask for the 11,000 pages of records, even though it had been clear long before then that Storer would seek damages for increases in insurance premiums. Under these circumstances, Continental has not justified reopening Anderson's deposition at this late date.

### XIII. *Motion to Strike Objections to Interrogatory Answers and Compel Further Answers*

Continental filed its third set of interrogatories on January 16, 1985. Storer responded on May 15, 1985. The only interrogatories at issue here are numbers two and five. Storer objected to these interrogatories, but, reserving its objections, provided answers. On August 29, 1986, Continental filed a motion to strike the objec-

tions and to compel further answers to the interrogatories.

■ This motion was filed more than fifteen months after Storer responded to the interrogatories. I will not countenance delay of this sort. "[T]he orderly administration of justice requires that a motion such as this must be filed within a reasonable time." *Anco Engineering Co. v. Bud Radio, Inc.*, 8 Fed.R.Serv. 37a.12 (D.Ohio 1963). In *Anco Engineering*, the motion to compel was filed nine months after the response. There is no excuse for Continental's fifteen month delay. "While the [information] may be relevant to the litigation, the same request could have been made more than a year ago. '[I]f the matter really wasn't important for nine months, it doesn't become important ninety or a hundred eighty days before trial.'" *In re "Agent Orange" Product Liability Litigation*, 97 F.R.D. 542, 543 (E.D.N.Y. 1983).

XIV. *Motion Pursuant to Fed.R.Civ.P. 42 That The Court Consider at A Subsequent Pretrial Conference A Segmented Trial*

■ Liability issues and damages issues are far too intertwined to permit a segmented trial in this case. Damage is one of the elements that Storer must prove in order to establish its abuse of process claim. Moreover, Storer has described some of the inconvenience that would result from a segmented trial, while Continental has done no more than allege that benefits would ensue. Further conference is not necessary. This motion is denied.

*Storer's Pretrial Motions*

I. *Motion to Preclude Continental from Putting in Issue at Trial Its Newly Asserted Defense of Reliance on Advice of Counsel*

On April 29, 1986, Continental moved for leave to amend its reply to Storer's counterclaim in order to assert an affirmative defense of reliance on the advice of counsel. I denied that motion on May 12, 1986,

essentially because it was too late in the game for Continental to raise a new defense. On April 30, 1986, Storer moved for leave to amend its counterclaim. The purpose of that amendment was precautionary. If Massachusetts law applied to the counterclaim, which Storer denied, Storer wished to assert a claim alleging a violation of M.G.L. c. 93A, which Storer felt would be established by proof of its other claims. I allowed Storer's motion on May 12, 1986. Continental answered Storer's newly amended counterclaim on May 27, 1986. In Continental's response, it again asserted a defense of reliance on the advice of counsel. Storer duly moved to strike that affirmative defense. On July 21, 1986, I denied Storer's motion to strike, because "[a] new pleading requires a new response."

■ Storer has again moved to strike Continental's defense of reliance on the advice of counsel, and I now allow Storer's motion. In response to Continental's fourth motion, *supra*, I ruled that Missouri law applies to Storer's counterclaims. Storer has stated that under these conditions its c. 93A claim is no longer relevant. We are therefore back in the situation that prevailed before Storer moved to amend its counterclaim, when I allowed the original motion to strike the defense as untimely. When I denied Storer's motion to strike the defense after Continental reasserted it in response to the amended counterclaim, the denial was applicable only to the newly asserted c. 93A claim. As it relates to the defamation and abuse of process counterclaims, Continental's defense is as untimely now as it was in May, and I again allow Storer's motion.

II. *Motion to Preclude Continental from Putting in Issue at Trial Defenses Involving Various Privileges Which Continental Has Not Asserted As Affirmative Defenses or Otherwise Raised in A Timely Fashion*

This motion is the converse of Continental's first motion. Since I allowed Continental's motion, Storer's motion is denied.

III. *Motion to Preclude Continental from Proffering Expert Testimony of a Lawyer to the Effect "That a Legal and Factual Basis for the Filing of Continental's Complaint Existed," As Set Forth in Its Designation of Expert Testimony Filed on August 29, 1986*

Continental has designated an attorney, Francis Fox, as an expert witness. He is expected to testify "that a factual and legal basis for the filing of the Complaint existed and that the cause of action was otherwise meritorious." Since I have ruled in response to Storer's first motion that Continental will not be permitted to raise its defense of reliance on the advice of counsel, any testimony by Fox relating solely to that defense will be barred. This motion is otherwise premature. I am not prepared at this time to exclude all testimony by Fox. It is not clear that his evidence will be of the type precluded in *Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, (2nd Cir.), *cert. den.,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977), rather than that permitted by *Marx.* Storer may raise any proper objections it may have to specific questions when Fox testifies.

*Summary*

Continental's pretrial motions numbered I, V and XI are ALLOWED. Continental's motion number VII is allowed only regarding the abuse of process counterclaim, and even regarding the abuse of process counterclaim, Continental's seventh motion is DENIED to the extent that it seeks to preclude recovery for reputation damages. Continental's other pretrial motions are DENIED.

Storer's first pretrial motion is ALLOWED. Its third pretrial motion is ALLOWED to the extent that no expert legal opinion testimony will be permitted if that testimony relates solely to Continental's defense of reliance on the advice of counsel, since I have barred Continental from rais-

ing that defense at trial. Storer's pretrial motions are otherwise DENIED.