Dorothy GUIRL, Co-Trustee of the H.P. Guirl Trust, Plaintiff-Appellant,

v.

James N. GUIRL, Defendant-Counter-Claimant; Respondent and Cross-Appellant, Individually and as Co-Trustee of H.P. Guirl Trust,

Dorothy Guirl and Jon Guirl, Individually, Appellants-Respondents on Cross-Appeal.

Nos. 49915, 49951.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 4, 1986.

Motion for Rehearing and/or Transfer Denied April 8, 1986.

Paul H. Schramm, Clayton, for Dorothy Guirl.

Mark S. Corman, Clayton, for Dorothy Guirl and Jon Guirl.

John C. Rasp, St. Louis, for James N. Guirl.

KAROHL, Presiding Judge.

Plaintiff, Dorothy Guirl, defendant's mother, and defendant's brother, Jon Guirl, who is a defendant on the counterclaim, appeal judgments in a court-tried case refusing to remove defendant, James Guirl, as co-trustee of a family trust, and refusing to order defendant's stock in a family corporation, sold to satisfy a purchase money note under a Collateral Pledge Agreement. Jon Guirl was not a party-plaintiff in the petition filed by Dorothy Guirl against James Guirl but was a named defendant in the counterclaim. Dorothy and Jon Guirl also appeal judgments, (1) ordering Dorothy Guirl to give an accounting to the family trust and removing her as co-trustee; (2) disqualifying Jon Guirl as a successor co-trustee; (3) awarding James Guirl damages from Dorothy and Jon for abuse of process in instituting and maintaining this litigation; and (4) awarding James damages from Jon for tortious interference of contract.

Defendant James cross-appeals because the trial court failed to award damages against plaintiff mother and son for prima facie tort.

This case was tried on extensive agreed facts and the testimony of the principals. The court made exhaustive findings of fact and conclusions of law. From the agreed facts and testimony, the court, as the trier of fact, could have found the facts given in this opinion.

## BACKGROUND FACTS

Howard P. Guirl and Dorothy Guirl were the parents of five children, James, Jon, David, Douglas and Susan. Howard P. Guirl died on March 7, 1981. During his lifetime, he operated General Automatic Transfer Company (GAT), and established the Howard P. Guirl trust (H.P.G. trust). James was active in the operation of the company with his father.

On December 5, 1975, Howard P. and Dorothy Guirl executed a buy-sell agreement whereby if either desired to dispose of any of their GAT stock, they would first offer the shares to be sold to James N. Guirl, unless and until he had at least 51% of the issued and outstanding stock. In the event of death of either of them, the shares of the deceased were subject to the same agreement in favor of James. The agreement contained a formula for determining the price to be paid. The purchase price was payable by ten equal consecutive annual payments with interest at not more than 6%. The first payment was to be made one year after the date of death, and on the same day of each year thereafter with interest on all notes to be paid annually. Prior to payment of the installments, the purchaser was entitled to exercise all rights of ownership but was required to pledge the stock to the personal representative of the decedent as security for payment. At the time of the execution of the agreement, there were 100,000 issued and outstanding shares of GAT. The agreement was amended on December 1, 1976, in order to accommodate stock transferred by Howard P. or Dorothy Guirl to trustees of their respective trusts. The amendment to the buy-sell agreement was signed by Howard P. Guirl, individually, and as trustee of his trust dated October 5, 1976, and by Dorothy Guirl, individually, and as trustee under his and her trust dated October 5, 1976.

## FACTS

Howard P. Guirl died on March 7, 1981. On May 8, 1981, James exercised the option granted in the buy-sell agreement, and purchased 12,000 shares of GAT stock from the H.P.G. trust for the sum of $108,000, evidenced by a series of ten negotiable promissory notes in the amount of $10,800 each. The first note was due on March 7, 1982, the second on March 7, 1983, the third on March 7, 1984, and so on until the last note was payable on March 7, 1991. He secured the payment of the notes by a Collateral Security Agreement in favor of the trust. In addition to the obligation to pay the notes, James agreed that so long as any part of the indebtedness on the notes remained unpaid, he would cause GAT to comply with all governmental regulations, continue the corporation in good standing, and keep true and accurate books of account showing its business transactions. Significant to this appeal was a further agreement, Article III (c), "To not assign, transfer, mortgage, hypothecate or pledge its property, or any substantial part of it; ..." The stated intention of the Collateral Security Agreement was "to secure the payment of the principal and interest on the Notes, according to their terms and according to the terms, provisions and conditions of the instant Collateral Security Agreement, and to secure the performance of each of the covenants and conditions contained in the instant Collateral Security Agreement." The agreement also provided that upon payment in full of the notes, the trustees were to return the shares pledged, properly endorsed to James. At the time James purchased the 12,000 shares from the H.P.G. trust, he was a co-trustee of the trust with his mother, Dorothy Guirl.

During the period of dispute between Dorothy and Jon Guirl, and James Guirl, James owned 51% of the outstanding shares of stock of GAT, was the president and a director of GAT, and a co-trustee of the H.P.G. trust. Prior to the dispute, he was a trustee on the Dorothy Guirl trust but resigned at her request. Dorothy Guirl was the secretary and a director of GAT until replaced by Jon on July 11, 1983, and a co-trustee of the H.P.G. trust, and her own trust. Jon Guirl was a shareholder of GAT, was named but did not serve as a successor trustee of the H.P.G. trust, but not an officer of GAT. He replaced his mother as a director on July 11, 1983. Prior to the litigation, James Guirl timely paid the first three purchase money notes. It is agreed that he was never in default on the payment of any of the notes. Plaintiff Dorothy Guirl testified that she was never concerned that the notes would be not timely paid. She believed that James would pay each note when due.

On November 8, 1983, plaintiff, Dorothy Guirl, in her capacity as a co-trustee of the H.P.G. trust attempted to declare an event of default on the stock Collateral Security Agreement, and the notes. This was done at the instance and request of Jon Guirl. Dorothy acknowledged that she did so in order to divest James from his majority stock position, and to allow other family members greater control over the operation of GAT. She did so upon the basis of her conclusion, suggested by Jon, that James had violated the provisions of the Collateral Security Agreement which prohibited him from signing, transferring, mortgaging or pledging the property of GAT (or a substantial part of it). She claimed that three acts of James individually and as president of GAT were violations of the agreement: (1) On February 8, 1982, he traded a 1976 airplane which was subject to a chattel mortgage for a 1979 airplane for which GAT gave a purchase money chattel mortgage; (2) on March 1, 1983, he executed a renewal note secured by an existing deed of trust on real estate owned by GAT; and (3) in August 1983, James as a director of GAT, increased the existing line of credit of GAT with Hampton Metro Bank from $200,000 to $300,000.

Defendant, James Guirl, denied any violation or default under the notes. He contends that none of the three claims of default were prohibited acts by the provisions of the Collateral Security Agreement. First, he contends that the three alleged violations were not violations because they

were done pursuant to good sound business judgment, and were required by the established business practices of GAT before he purchased the 12,000 shares of stock. The use of airplanes was necessary to company business, and had been for many years. The renewal of the note and deed of trust was inherent in the original loan in 1978, because the note and deed of trust which were renewed in 1983, were amortized over a period of twenty years but were due and payable at the end of five years. The line of credit was in the form of an unsecured demand note, and the extension of the line of credit could not and did not represent an assignment, transfer, mortgage or pledge of any part of the property of GAT. Second, each of the transactions were approved by plaintiff, Dorothy Guirl, before they occurred. Defendant, James Guirl's position may be summarized as both a denial that any of these transactions violated the provisions of the Collateral Security Agreement by prejudicing the value of the company, and an assertion that each of the transactions was necessary to the preservation of or increase in the value of the company. Formal resolutions of the Board of Directors supported the transactions.

On February 3, 1984, Dorothy as trustee of the H.P.G. trust sued James, seeking (a) to remove him as a trustee of the H.P.G. trust, and (b) requesting that she be permitted to sell the 12,000 shares of stock of GAT purchased by James. James filed an answer denying breach and claimed the affirmative defenses of estoppel, laches, waiver and ratification. After the original answer, James tendered full payment of the principal and interest due on the remaining seven stock purchase money notes although they were not then due by depositing the amount unpaid into an account of the H.P.G. trust. He continued to deny breach of the security agreement but tendered full payment and asserted redemption under § 400.9–506 RSMo 1978. Dorothy Guirl, as trustee, refused to accept and returned the payment. On October 26, 1984, James, by leave and by consent, deposited the unpaid balance on the notes into the registry of the court. On October 31, 1984, James amended his answer to include additional affirmative defenses of payment, redemption of security under § 400.9–506 RSMo 1978, and failure of plaintiff, Dorothy, to act in good faith. The court found as a fact that James made a good and valid tender to plaintiff, Dorothy, as co-trustee, of all amounts of principal and interest due under the purchase money notes of May 8, 1981.

Jon Guirl assisted Dorothy in requesting the court to remove James as a co-trustee of the H.P.G. trust, and ordering a sale of 12,000 shares of stock purchased and pledged by defendant, James Guirl.

James counterclaimed individually and as co-trustee against both his mother, Dorothy, and his brother, Jon. The counterclaim sought relief for actual and punitive damages against Dorothy and Jon on the theory of prima facie tort (Count I); an accounting from Dorothy Guirl for assets of the H.P.G. trust removed in violation of the trust and without the consent of James Guirl, co-trustee (Count II); removal of Dorothy Guirl as co-trustee, and disqualification of Jon Guirl as successor trustee of the H.P.G. trust (Count III); tortious interference with contract by Jon Guirl for acts interfering with the notes and Collateral Security Agreement between the H.P.G. trust and James Guirl (Count IV); slander by Jon Guirl—(dismissed and not now relevant); abuse of process by Dorothy Guirl and Jon Guirl, acting in concert with one another to use the petition in this case and the refusal to dismiss the petition after tender of and payment in full of the stock purchase money promissory notes, for collateral purposes (gain control of defendant's stock to their own advantage and not to collect a judgment for payment on the notes) (Count VI).

The trial court entered judgment in favor of defendant, James, on both requests for relief in plaintiff Dorothy's petition. The trial court denied relief on Count I of the counterclaim, prima facie tort, and entered judgment for Dorothy and Jon. The trial court granted judgment for $61,317.19 (including interest) in favor of James as co-

trustee on behalf of the H.P.G. trust against Dorothy Guirl for sums withdrawn without consent of James N. Guirl as trustee. The court ordered Dorothy Guirl removed as a trustee, and Jon Guirl disqualified as a successor trustee of the H.P.G. trust. The court entered judgment in favor of James, and against Dorothy and Jon, on the claim for abuse of process, and awarded actual damages of $43,151.40 against both Dorothy and Jon, and punitive damages of $50,000 against Jon Guirl only. Before assessing these damages, the court also found judgment in favor of James and against Jon on claim of tortious interference with contract. The damages on this count were not separately stated. Finally, the court adjudged that the payment into the registry of the court by James extinguished the notes and security interest of the H.P.G. trust, and ordered the clerk to pay to James N. Guirl, trustee of the H.P.G. trust, the sum previously paid into the registry of the court. Dorothy and Jon appeal denial of relief on Counts I and II of the petition, and the judgments in favor of James on his counterclaim. James cross-appeals claiming the court erred in failing to grant him a judgment on his claim against Dorothy and Jon for prima facie tort.

## DOROTHY AND JON'S APPEAL

Dorothy and Jon's appeal involves: (a) claim of error in denial of relief on the petition; (b) matters involving the H.P.G. trust where the court entered a judgment in favor of the trust and against plaintiff, Dorothy Guirl, for unauthorized withdrawal of $48,812.62, removed Dorothy Guirl as a trustee, and disqualified Jon Guirl as named successor trustee; (c) judgment in favor of defendant, James Guirl, and against both Dorothy and Jon Guirl for abuse of process awarding actual damages against both, and punitive damages only against Jon; and (d) judgment against Jon Guirl for actual and punitive damages on the tort of tortious interference of the contract between defendant, James Guirl, and the H.P.G. trust.

We find no error of fact or law on the judgment in favor of defendant, James Guirl, on plaintiff, Dorothy Guirl's petition. The evidence is clear that James did nothing with regard to the three assignments of breach of the Collateral Security Agreement to jeopardize the assets or the operation of GAT. As the trier of fact, the court was entitled to believe that the value of a share of stock of GAT increased from $9.00 a share in 1981, to $9.84 a share in 1983. Defendant, James Guirl's actions with regard to each of the three transactions were expressly approved by plaintiff, Dorothy Guirl, and Jon Guirl testified that he did not contend that James violated the H.P.G. trust agreement. This fully disposes of the contention that James should be removed as a co-trustee of the H.P.G. trust. The power of the court to remove a trustee should be used sparingly, and before it is exercised, there should be such misconduct as to evidence of want of capacity or fidelity, which has, or might likely, put the trust in jeopardy. *Morrison v. Asher,* 361 S.W.2d 844, 852 (Mo.App.1962). The plaintiffs wholly failed to prove that the assets of the H.P.G. trust were placed in jeopardy by any action of James. On the contrary, the evidence tended to prove that the airplane, the line of credit, and the protection of the real estate were necessary and proper actions by James and others responsible for the management and protection of the corporation which automatically included the value of the pledged 12,000 shares of stock. The findings of the trial court on the issues presented by the petition are supported by the evidence, and no error of law appears. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

We find no error in the judgment removing Dorothy Guirl as a trustee, and ordering her to return the sums withdrawn without the consent, knowledge or signature of the co-trustee. She acknowledged by her testimony that between May 1981 and April 30, 1983, she withdrew sums from the trust account at a savings and loan association. She was aware that the trust permitted withdrawal only for her

needs, but could not recall the purpose of the withdrawal of the funds. She further acknowledged that she was aware that the trust permitted such withdrawals only with the knowledge and consent, and upon approval of both trustees. She received the monthly statements of the savings and loan association account from which she withdrew the funds at her own home, and neither discussed the withdrawals nor the purpose of the withdrawals with James, the co-trustee. The return of the unauthorized withdrawals will not deprive plaintiff, Dorothy Guirl, of the benefits of the provisions of the trust. She remains the present beneficiary. This did not excuse or justify her misconduct as a trustee.

The decision of the trial court to remove Dorothy Guirl, and disqualify Jon Guirl as a named successor trustee is also supported by the record. During the period of 1983 and 1984, Jon Guirl invested and lost substantial sums of money borrowed from Dorothy Guirl in what was admittedly a highly speculative commodities market. He was unemployed, and claimed to be either a woodshed engineer or a pilot on income tax returns. He was not qualified for either. He had borrowed and lost over $100,000 from his mother, Dorothy and his brother, Douglas. He had no means or hope to repay them. Further, while the trust was in possession of a collateral pledge agreement on stock of GAT, he encouraged his mother to accelerate or demand payment of a number of corporation debts in the form of promissory notes of the corporation which may have caused damage to the corporation, and in turn, to the value of the pledged stock. Dorothy Guirl, as trustee, participated in these transactions with Jon Guirl. She not only withdrew funds from the trust without authority, she participated in Jon's loss of substantial sums of money which demonstrated, at least, a lack of prudence expected of a qualified and faithful trustee. In her testimony, she acknowledged that she felt that Jon was better qualified as a director of GAT than she. The evidence demonstrated an abundance of lack of capacity and judgment on the part of both,

and the court did not err in removing Dorothy and disqualifying Jon. Though there was a conflict in the testimony regarding James' knowledge of the unauthorized withdrawals, the trial court has the prerogative to determine the credibility of witnesses, and apparently accepted James' testimony on this issue. *In re Marriage of Plank*, 670 S.W.2d 185, 189 (Mo.App.1984). The actions of Dorothy and Jon evidence a want of capacity or fidelity, and their service as trustee did or would place the assets of the trust in jeopardy. Their acts demonstrated a lack of ability to manage their own affairs and the affairs of the H.P.G. trust. Both misused the trust for their own ends. Their efforts opposed the purpose of Howard P. Guirl as settlor of the trust to place 51% of GAT with James.

Dorothy and Jon also claim error in the judgment of the trial court in favor of James on his counterclaim for abuse of process. Plaintiff Dorothy admitted the purpose in filing and maintaining the petition was not the recovery of the balance due on the stock purchase notes, but to use the trust and the Collateral Security Agreement to divest James from a controlling interest in GAT. The elements of a claim for abuse of process are: (1) an illegal, improper, perverted use of the process that is not warranted or authorized; (2) an improper purpose in exercising such illegal, improper or perverted use of process; and (3) resulting damages. *Stafford v. Muster*, 582 S.W.2d 670, 678 (Mo. banc 1979). The essence of abuse of process is not the commencement of an action without justification, but it is the misuse of process for an end other than that which it was designed to accomplish. *Wells v. Orthwein*, 670 S.W.2d 529, 533 (Mo.App.1984). Dorothy and Jon contend the trial court erred in finding an improper collateral purpose in maintaining the suit to force a sale of the stock, and a divestiture of James as a trustee.

We find no error in the judgment against Dorothy Guirl and Jon Guirl for abuse of process in maintaining the cause

of action after defendant, James Guirl, tendered full payment of the notes which were not, by their terms, due. Not only was the suit unjustified but maintaining the litigation after full tender could not have accomplished any purpose contained in the petition. The sole purpose of the Collateral Security Agreement was to secure payment of the notes, and full payment was tendered and thereafter deposited with the registry of the court. Had the court ordered a sale of the 12,000 shares of stock, the trust could not have received from the sale more than the balance due. Further, neither plaintiff, Dorothy Guirl, or Jon Guirl, offered evidence of any ground on which the court could have removed defendant, James Guirl, as a trustee. Jon acknowledged in his testimony that he did not contend that James violated the trust agreement, and Dorothy acknowledged in her testimony that the true purpose of her petition was not contained within the pleading. She simply wanted to divest James of the stock so that she could wrest control of GAT for other members of her family. The intent of the suit was not to assert rights on behalf of the trust, but to take control of GAT away from James. The action against James Guirl was motivated by an improper and perverted use of process.

■ Jon Guirl, also complains that the court erred in awarding punitive damages on the counterclaim for abuse of process to defendant, James Guirl. Punitive damages are recoverable upon a showing of either actual or legal malice. *Imperial Utility Corp. v. Cytron*, 673 S.W.2d 858, 859 (Mo. App.1984). Punitive damages do not lie as a matter of right, and whether the same are awarded lies wholly within the discretion of the trial court. *Riddle v. Dean Machinery Co.*, 564 S.W.2d 238, 259 (Mo. App.1978). The test to be applied in determining if malice existed as a basis for an award of punitive damages is whether the actor did a wrongful act intentionally without just cause or excuse. *Stark v. American Bakeries Co.*, 647 S.W.2d 119, 123 (Mo. banc 1983). The defendant must not only have intended to perform the act which is

ascertained to be wrongful, but must have known it was wrongful when he did it. *Id.*

■ Applying these principles, we find no error in the discretionary award of punitive damages against Jon Guirl, but no award against plaintiff, Dorothy Guirl. The court found a willful, intentional and malicious act by both Dorothy and Jon in maintaining the petition after tender of full payment. on the notes, but elected to award punitive damages in favor of defendant, James Guirl, only against Jon Guirl. Under *Riddle*, the court was not obligated to assess punitive damages against both Dorothy and Jon after finding actual malice in their actions. Although not found as a fact, the evidence discloses that Dorothy Guirl deferred to the suggestion and will of Jon Guirl in instituting and continuing the litigation. He selected their lawyer, the discharge of their first lawyer, the selection and hiring of a second lawyer. They are represented by new counsel on appeal. Jon Guirl undertook to research the law, drafted pleadings, drafted demand letters for Dorothy's signature, and was otherwise a more dominant figure. We have noted evidence that during the period of contest, Jon was unemployed, adopted claims of status as an engineer and a pilot without the benefit of training or experience in either field, borrowed large sums of money from his mother and brother, with no apparent ability to repay the loans, invested their money in highly speculative commodity markets, and lost substantial sums of money. He stood to gain by replacing James as a co-trustee, and by divesting James from the management and control of a corporation that had been and was well run by James on behalf of all the stockholders. An apparent improper motive from these actions was a continued control of his mother, Dorothy Guirl, and her property. This evidence is a basis to distinguish between the award of punitive damages against Jon Guirl, and not against Dorothy Guirl. We find no error in the judgment on defendant, James Guirl's counterclaim for abuse of process.

■ Jon Guirl, also claims error in the judgment of the court against him on James' claim for tortious interference with contractual relationships. The elements of this tort were recognized in *Heitman v. Brown Group, Inc.*, 638 S.W.2d 316, 320 (Mo.App.1982). They are: (1) the existence of a valid contract or business relationship; (2) knowledge by the defendant of the contract or relationship; (3) intentional interference by the defendant which induces the breach of contract or relationship; (4) absence of justification; and (5) resulting damages. Plaintiffs argue the absence of the fourth element, absence of justification.

■ The trial court found that Jon was unjustified in his actions in maintaining the petition after tender of full payment on the notes because Jon had no direct financial interest in the notes or the Collateral Security Agreement between James and H.P.G. trust. It found that Jon acted intentionally, willfully and maliciously, and encouraged Dorothy to breach the terms of the Collateral Security Agreement between James and the trust. Jon claims that he was a contingent beneficiary of the trust, and a named successor trustee, and so had an interest in enforcing the terms of the Collateral Security Agreement on behalf of the trust.

We agree that the court erred in entering the judgment on the tort of intentional interference with contract or contractual relations, but for a different reason than that asserted. The classic example of tortious interference arises where a third party induces buyers to breach contracts with sellers for the third parties' economic advantage. *See Clark-Lami, Inc. v. Cord*, 440 S.W.2d 737 (Mo.1969); *Downey v. United Weatherproofing*, 253 S.W.2d 976 (Mo.1953); *Heitman v. Brown Group, Inc.*, 638 S.W.2d 316 (Mo.App.1982). In those cases, the seller is defenseless to protect himself except by action against the party for a claim of tortious interference with contract. In the present case, the initiative and insistence of Jon Guirl encouraged and caused Dorothy Guirl to file and maintain the petition. These acts were wrongful as an abuse of process. However, the tort of abuse of process fully covers the claim and injury done to James Guirl as a party to the Collateral Security Agreement. He had the defense of compliance, and full opportunity to defend without losing the benefit of the contract. Although an abuse of process because of the improper motive, Jon's actions were not directed to encouraging a breach of contract, but to the enforcement of the contract as Jon interpreted it. His interpretation was found wrongful, and he stands liable for abuse of process. However, on these facts, the third element of the cause of action recognized in *Heitman* is missing. Nothing that Jon did through Dorothy was intended to dissolve or destroy the contract in order that he could enjoy the benefit of a competitive contract with the trust. On these facts, we find that the tort of abuse of process fully covers defendant, James Guirl's complaint. The judgment was entered on both torts in a single paragraph, and the award of damages was mentioned only once as applying to both torts. Accordingly, we find that the evidence failed to prove one necessary element of tortious interference, (interference to induce breach). The court erred in rendering the judgment. However, this finding will not affect the actual or punitive damages awarded for the tort of abuse of process, and not separately described for tortious interference.

### DEFENDANT'S APPEAL ON COUNTERCLAIM

Defendant, James Guirl, cross-appeals contending that the court erred in refusing to enter judgment in his favor against Dorothy and Jon on Count I of the counterclaim which alleged a cause of action for prima facie tort. He argues that the court erred in refusing to enter judgment "even though the court's findings of fact found every element necessary for entry of said judgment for James" and that the court refused to enter the judgment solely because the court did not personally believe in the doctrine of prima facie tort.

**248**

The elements of prima facie tort are: (1) an intentional lawful act by the defendant; (2) an intent to cause injury to the plaintiff; (3) injury to the plaintiff; and (4) an absence of any justification or an insufficient justification for the defendant's acts. *Porter v. Crawford,* 611 S.W.2d 265, 268 (Mo.App.1980). This tort is not submissible in all cases where the elements are proven. If at the close of all the evidence, plaintiff's proof warrants submission under existing well-defined nominate tort cause of action, the action may not be submitted under the prima facie tort doctrine. *Bandag of Springfield, Inc. v. Bandag, Inc.,* 662 S.W.2d 546, 552 (Mo.App.1983).

In *Bandag,* the court refused to allow recovery under the prima facie tort doctrine because plaintiff's case alleged a cause of action for tortious interference with contract. *Id.* at 554. Here, even though we have determined that James cannot recover under tortious interference with contract, he has recovered under abuse of process. James argues that although he did recover under other tort doctrines, additional facts were alleged to establish a cause of action for prima facie tort.

Our review of the records indicate that James incorporated all of Count I, the prima facie tort count, into the abuse of process count. The additional facts he speaks of were alleged in Count VI, the abuse of process count not the prima facie tort count. Since James recovered on abuse of process, he cannot recover on prima facie tort. *See Halford v. American Preferred Ins.,* 698 S.W.2d 40, 43 (Mo.App. 1985); *Bandag of Springfield, Inc. v. Bandag, Inc.,* 662 S.W.2d 546, 552 (Mo. App.1983). Count I of defendant's counterclaim was properly denied.

We affirm the judgment in favor of defendant on the petition and on his counterclaim for abuse of process. We affirm the denial of relief on the counterclaim for prima facie tort. We reverse the judgment for defendant for tortious interference with contract.

SIMON and GARY M. GAERTNER, JJ., concur.