Klaus LAMBERT, and Constance Alt, Appellants,

v.

Mark WARNER and The City of Portage Des Sioux, Respondents.

No. ED 96445.

Missouri Court of Appeals, Eastern District, Division Four.

July 3, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 7, 2012.

Application for Transfer Denied Oct. 30, 2012.

John C. Kress, The Kress Law Firm, LLC, St. Louis, MO, Jonathan E. Fortman, Law Office of Jonathan E. Fortman, LLC, Ellisville, MO, for Appellants.

Stephen A. Martin, The Law Office of Stephen A. Martin, Nathan A. Steimel, The Law Offices of Nathan A. Steimel, L.L.C., St. Charles, MO, for Respondents.

KURT S. ODENWALD, Chief Judge.

*Introduction*

Appellants Klaus Lambert ("Lambert") and Constance Alt ("Alt") (hereinafter collectively "Appellants") appeal from the trial court's judgment after a jury found them liable to Respondents Mark Warner ("Warner"),[1] Russel Cissel ("Cissel"),[2] and the City of Portage des Sioux (collectively hereinafter "City") for abuse of process in connection with the filing of certain lawsuits relating to a long standing dispute between Appellants and City over the condition of Appellants' property. Appellants assert multiple points of error. First, Appellants argue that the trial court erred in denying their motions for a directed verdict, judgment notwithstanding the verdict or for a new trial, and instructing the jury on damages because insufficient evidence existed to support a verdict for City. Sec-

---

1. In his capacity as Mayor of Portage des Sioux.

2. In his capacity as Zoning Commissioner for Portage des Sioux.

ond, Appellants contend that the trial court erred in submitting a punitive damages instruction because insufficient evidence existed that Appellants acted with the required evil motive or reckless indifference when commencing and prosecuting the underlying lawsuits. Third, Appellants aver that the trial court's verdict director constituted a roving commission. Lastly, Appellants claim the trial court improperly admitted evidence. Finding no error, we affirm the judgment of the trial court.

*Factual and Procedural History*

Appellants' property was damaged by a flood in 1993. After the flood waters receded, an independent disaster appraiser determined that several structures on Appellants' property were uninhabitable. In 1998, City sent formal notice to Appellants seeking the repair or demolition and removal of the affected structures. Appellants made no significant repairs, and did not remove the structures. In 2003, City filed a petition in the Circuit Court of St. Charles County alleging various violations of its municipal ordinances. In particular, City alleged Appellants' property contained multiple boats, that the property was overgrown creating a fire and driving hazard, and that the structures thereon were damaged and constituted a health and safety hazard. On March 31, 2004, the trial court entered an order finding a number of the buildings uninhabitable, and ordering one building torn down. On April 27, 2004, the Circuit Court of St. Charles County issued a judgment finding that Appellants continued to maintain the property in a condition that violated multiple City ordinances. The Circuit Court of St. Charles County made the specific factual finding that "[t]he red/rust colored building and the boat which had trees growing through it (both identified at trial) are found to be refuse, dangerous and injurious and must be removed." The Cir-

cuit Court of St. Charles County further ordered that "[a]ll remaining (structures) are so damaged they are unfit for use of habitation and shall not be permitted" and therefore Appellants must either restore, elevate, or demolish those structures. On May 16, 2006, this Court issued a mandate affirming the trial court's April 2004 judgment as to the uninhabitable condition of the relevant structures and granting City injunctive relief. *City of Portage Des Sioux v. Lambert*, 196 S.W.3d 587, 592–93 (Mo.App. E.D.2006).

On October 19, 2006, City filed a motion in the Circuit Court of St. Charles County seeking to compel Appellants' compliance with the April 2004 order as affirmed by this Court. The Circuit Court of St. Charles County granted Appellants two extensions of time to comply with the April 2004 order. On October 19, 2006, the Circuit Court of St. Charles entered a judgment giving Appellants 60 additional days to comply with its previous abatement order, and 180 days to comply with its previous order to restore, elevate, or demolish the remaining structures on the property. On September 24, 2007, the Circuit Court of St. Charles County granted City's third motion to compel Appellants' compliance with the court's earlier orders. The Circuit Court of St. Charles County also entered judgment forfeiting Appellants' bond to City. In their notice of appeal to this Court from the September 24, 2007 order, Appellants stated that the court ordered that the forfeited bond money would be used to pay for City's expenses in demolishing the property at issue.

On April 25, 2008, while Appellants' appeal of the September 2007 judgment of the Circuit Court of St. Charles County was still pending, Appellants filed a collateral action in the Circuit Court of St. Louis County seeking a temporary injunction to prevent City from demolishing the struc-

tures on Appellants' property and alleging other various actions in tort (hereinafter "2008 TRO"). Appellants later filed a petition for writ of prohibition in this Court asking that we order the St. Louis County Circuit Court not to transfer the case to St. Charles County. After this Court denied Appellants' petition for writ of prohibition, the Circuit Court of St. Louis County transferred the 2008 TRO to the Circuit Court of St. Charles County. Appellants subsequently dismissed the 2008 TRO in December 2008.

One month after dismissing their 2008 TRO, Appellants filed another action in the Circuit Court of St. Louis County, again seeking to enjoin City from demolishing the structures on Appellants' property (hereinafter "2009 TRO"). In this action, Appellants averred their property had a wide array of historical significances and should not be altered or demolished. Appellants also alleged claims in tort seeking damages for intentional infliction of emotional distress, negligent infliction of emotional distress, tortious interference with a business relationship, and civil conspiracy. In their pleadings, Appellants did not disclose either the April 2004 or the September 2007 judgments entered by the Circuit Court of St. Charles County. Appellants also affirmatively stated that venue for the 2009 TRO action was proper in St. Louis County. The Circuit Court of St. Louis County transferred the 2009 TRO back to the Circuit Court of St. Charles County, once again over Appellants' objection, and once again after this Court denied the petition for writ of prohibition filed by Appellants to prevent the transfer of the petition to St. Charles County. This Court's order denying Appellants' petition for writ of prohibition admonished that Appellants' failure to apprise this Court of related past proceedings was "troublesome" and a violation of Mo. R. Civ. P. 84.24(a)(1) and Supreme Court Form No. 16.

City filed its answer to the 2009 TRO after the litigation was transferred to the Circuit Court of St. Charles County. City presented multiple affirmative defenses including collateral estoppel and res judicata. City also filed an amended counterclaim alleging abuse of process on grounds that the 2008 and 2009 TRO actions filed by Appellants in St. Louis County Circuit Court constituted an illegal, improper, and/or perverted use of process. City alleged that Appellants filed the 2008 and 2009 TRO actions with a wrongful, unlawful, malicious, and ulterior purpose in order to avoid the execution of the April 2004 and September 2007 judgments of the Circuit Court of St. Charles County authorizing City to demolish the relevant structures on Appellants' property. City sought both actual and punitive damages in its counterclaim.

On October 22, 2009, while City's counterclaims were pending, the Circuit Court of St. Charles County found Appellants in contempt of its April 2004 and September 2007 judgments for failing to remedy the condition of the subject property. That court further ordered that if Appellants "fail to demolish and remove the red/rust colored building and remaining buildings on the property by November 30, 2009, the City of Portage des Sioux is hereby authorized to demolish and remove the structures." Approximately one year later, on October 28, 2010, City demolished the relevant structures. Following the demolition of the structures, Appellants continued discovery on their claims by taking the depositions of Warner and Cissel. Two months after the demolition, Appellants dismissed all of their claims asserted under the 2009 TRO. The case proceeded to trial on the only remaining claim, City's counterclaim for abuse of process.

At the close of City's evidence on its counterclaim, the trial court denied Appel-

lants' motion for a directed verdict. A jury found Appellants liable to City for abuse of process and awarded City $56,000 in actual damages and $35,000 in punitive damages. Appellants filed, and the trial court denied, a motion for judgment notwithstanding the verdict and for a new trial. This appeal follows.

## Points on Appeal

Appellants assert multiple points of error on appeal. In their first and fourth points on appeal, Appellants argue that the trial court erred in denying their motions for a directed verdict and for judgment notwithstanding the verdict or for a new trial because there was insufficient evidence that Appellants filed the underlying lawsuits for a collateral purpose. In their second point on appeal, Appellants contend that the trial court erred in submitting a punitive damages instruction because there was insufficient evidence that Appellants acted with evil motive or reckless indifference in commencing and prosecuting the underlying lawsuits. In their third point on appeal, Appellants argue that the trial court erred in submitting a damages instruction to the jury because the evidence of City's damages was speculative. In their fifth point on appeal, Appellants aver that the trial court erred in admitting evidence of the factual findings contained within a previous trial court's judgment concerning the condition of Appellants' property. In their final point on appeal, Appellants argue that the trial court's verdict director consisted of a roving commission.

## Standards of Review

■ The standard of review is essentially the same for a trial court's denial of a motion for judgment notwithstanding the verdict and denial of a motion for a directed verdict. *Klotz v. St. Anthony's Medical Center*, 311 S.W.3d 752, 769 (Mo. banc 2010) (internal citation omitted). A case is not submissible unless all facts essential to liability are predicated on legal and substantial evidence. *Id.* In determining whether evidence was sufficient to support a jury's verdict, we view the evidence in the light most favorable to the verdict and will reverse for insufficient evidence only where there is a complete absence of probative facts to support the jury's verdict. *Id.*

■ We review *de novo* whether the record contains sufficient evidence to support the trial court's submission of a punitive damages instruction. *Howard v. City of Kan. City*, 332 S.W.3d 772, 788 (Mo. banc 2011).

■ Unpreserved claims of instructional error in civil cases are reviewed only for plain error, and at this Court's discretion. *Atkinson v. Corson*, 289 S.W.3d 269, 276 (Mo.App. W.D.2009). We will reverse for plain error in civil cases only under circumstances where the error causes injustice so egregious as to weaken the very foundation of the judicial process and seriously undermine confidence in the outcome at trial. *Id.*

■ We review a trial court's ruling as to the admission of evidence for an abuse of its discretion. *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005).

## Discussion

I. **Viewing the evidence in the light most favorable to the verdict, the record contains sufficient evidence to support the jury's verdict for abuse of process.**

In their first and fourth points on appeal, Appellants argue that the trial court erred in denying their motions for a directed verdict and judgment notwithstanding the verdict or for a new trial. Appellants argue insufficient evidence exists to support a finding that Appellants had a collat-

eral purpose when they filed the underlying law suits, and that those lawsuits were not confined to their legitimate function. In their third point on appeal, Appellants argue that the trial court erred in submitting a damages instruction because evidence of City's damages was speculative. Appellants do not argue that the language of the instruction was erroneous, but assert that the record contains insufficient evidence of damages that would allow submission of the case to a jury. Points One, Three, and Four present a single issue for our review: whether the record contains sufficient evidence to support a verdict for abuse of process. We will address these three points together.

■ To make a submissible case for abuse of process a plaintiff must produce substantial evidence that (1) the defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, improper, perverted use of process; and (3) damages resulted. *Romeo v. Jones*, 144 S.W.3d 324, 330 (Mo. App. E.D.2004).

A. *The record contains sufficient evidence that Appellants made an improper use of a judicial process.*

■ City's counterclaim for abuse of process focuses on the two separate TRO actions filed by Appellants in St. Louis County Circuit Court and the two corresponding petitions for writs of prohibition relating to those petitions filed in the Court of Appeals. We are asked to consider whether the record contains sufficient evidence to support a finding that Appellants made an improper use of judicial process in pursuing their claims.

· ■ If a defendant's action is confined to its regular and legitimate function, there is no abuse of process even if the defendant had an ulterior motive in bringing the claim. *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 320 (Mo.App. E.D.2010). "The test is whether the process was used to accomplish some unlawful end or to compel [the opposing party] to do some collateral thing that he could not be compelled to do legally." *Id.*

The facts of this case, as they relate to the issue of whether Appellants improperly used a judicial process, are not in dispute. Appellants do not contest that they filed two TRO actions in St. Louis County Circuit Court and that they did not fully and accurately disclose the prior St. Charles County litigation regarding the demolition issues in those TRO actions. Appellants stipulated at trial that their pleadings in the 2008 and 2009 TRO actions did not disclose the previous litigation involving the same issues that led to the 2004 and 2007 judgments of the Circuit Court of St. Charles County. Appellants also stipulated that the pleadings filed in the 2008 and 2009 TRO actions did not inform the St. Louis County courts of Judge Rauch's 2007 judgment which granted City the costs for demolition. As this Court noted in our denial of Appellants' petition for writ of prohibition during the 2009 TRO, failure to disclose prior related litigation in a writ proceeding is troublesome and improper.

Did the Appellants' actions in filing the 2008 and 2009 TRO actions in St. Louis County, and later maintaining those actions in St. Charles County, viewed in the light most favorable to City, constitute an improper use of judicial process? Mindful of our standard of review, we hold that the evidence presented at trial is sufficient to support the jury's finding that Appellants improperly used a judicial process in both actions.

Our holding is premised upon evidence in the record that reasonably allows the jury to have reached two separate conclu-

sions: first, that Appellants filed, litigated and dismissed the 2008 and 2009 TRO actions without ever intending to adjudicate the merits of those actions; and, second, that Appellants knowingly filed both actions in an improper venue for the purpose of increasing City's cost and effort in litigating the underlying dispute. We address the importance of each in turn.

Appellants contend that Judge Rauch's 2007 order did not specifically authorize the demolition of the structure on their property, thereby providing Appellants a legal argument to challenge any action the City may take to demolish said structure. Appellants have argued that, as a matter of law, they properly used the judicial process by filing and dismissing multiple actions in St. Louis County as a means to avoid the prior St. Charles County order, and to force City to return to the St. Charles County Court to obtain a demolition order. We are not persuaded. A jury could reasonably conclude that had Appellants' purpose been to protect their property rights by forcing City to obtain a clarified demolition order, Appellants would have pursued the TRO actions to completion, and would not have dismissed the actions before adjudication on the merits. Appellants' short-lived lawsuits reasonably could support a conclusion that Appellants filed the TRO actions solely for the purpose of harassing or vexing City, which is not a proper purpose. *See* Rule 55.03(c). While Appellants argue the same facts could reasonably support another theory, the jury was free to reject Appellants' characterization of the facts.

It is also significant that the record contains evidence from which the jury could have concluded that Appellants filed the 2009 TRO action in a venue they knew to be improper, St. Louis County, and did so for the purpose of harassing or increasing City's cost of litigation. As stated earlier in this opinion, Appellants filed the 2008 TRO in St. Louis County after the original litigation was initiated in St. Charles County. The 2008 TRO action was transferred to St. Charles County over Appellants' objection. This Court confirmed that venue over this dispute was proper in St. Charles County, not St. Louis County. At trial, Alt testified that she was aware that venue had been determined proper in St. Charles prior to the 2009 TRO. Despite Alt's awareness that venue had been determined to be improper in St. Louis County, Appellants filed a petition seeking the same relief in the form of the 2009 TRO, and did so again in St. Louis County, where Appellants knew venue was improper. For a second time, the case was transferred back to St. Charles County and, again, this Court denied Appellants' second request for a writ prohibiting transfer of that action. Alt's testimony alone is sufficient evidence from which the jury could conclude that Appellants filed the 2009 TRO action in St. Louis County knowing venue was improper, and knowing the consequences of such actions.

Appellants' position on improper use crystallized during oral argument when questioned about their multiple filings in St. Louis County. This Court queried Appellants as to why their filing of the 2009 TRO in St. Louis County was not an improper use of process since there already had been a judicial determination that venue was improper in St. Louis County. The following exchange occurred:

Court: You got sent back to St. Charles County, if I'm correct?

Appellants: Correct.

Court: Alright, and after you got sent back to St. Charles County then you later filed another action in St. Louis County again after you've already been told once that you are suppose to be in St Charles County. In that second time, why isn't that an abuse of process?

Appellants: Because we are still using the process for its intended purpose, and that was to hold their feet to the fire. There is a specific statute that provides for the courts the ability to transfer the case if they think that it is improper.

Court: Would it be your position that you could continue to seek TROs in St. Louis County *ad infinitum* and just every time let them send you back to St. Charles County and that would be a perfectly appropriate use of process?

Appellants: Until the City received a valid demolition order in that 2003 case yes I believe so, until there is a Court of Appeals opinion that would say otherwise.

We now issue that opinion. The proper use of judicial process is to resolve disputes. We disagree with Appellants' assertion that the proper use of judicial process is to "hold parties' feet to the fire," and note Appellants' lack of cited judicial authority for this proposition. Using the judicial process properly may indeed result in holding a litigant's "feet to the fire." But taking legal action with the sole intent and purpose of "holding a litigant's feet to the fire" does not automatically render such action "proper." We reject Appellants' contention that a proper use of the judicial process includes filing and dismissing actions, *ad infinitum*, in a venue they know to be improper, even though a process exists allowing a party to contest venue and seek transfer.

By submitting a pleading to a court, litigants certify the reasonable accuracy of the legal and factual allegations made therein. Rule 55.03(c). In this case, even though the issue of venue was resolved through the course of the 2008 TRO and ensuing writ application, Appellants averred in paragraphs seven through nine of the 2009 TRO petition that venue was proper in St. Louis County. We reject Appellants' argument that knowingly filing actions in an improper venue in contravention of the Missouri Rules of Civil Procedure is a proper use of judicial process.

The record contains sufficient evidence from which the jury could have concluded that Appellants filed their 2008 and 2009 TRO actions without intending to resolve the merits of the dispute, and filed the actions in an improper venue to harass or vex City. Applying our standard of review, these facts and the reasonably logical inferences therefrom are sufficient to allow a jury to conclude that Appellants made an improper use of process when they filed the 2008 and 2009 TRO actions. In reaching our decision, we are mindful of the importance that litigants be able to aggressively use the judicial system to vindicate and protect their property rights. However, even the most aggressive litigants must properly use the judicial processes made available to them under our system of laws and rules of procedure. Appellants did not.

B. *The record contains sufficient evidence that Appellants filed the underlying actions for an improper purpose.*

■ We next inquire as to whether sufficient evidence exists from which a jury reasonably could find that Appellants filed their 2008 and 2009 TRO actions for an improper purpose. The answer to this question is yes.

■ As the plaintiff in an abuse of process action, the City had the burden of demonstrating the defendant had some ulterior purpose and acted willfully in the improper use of the process. *Crow v. Crawford & Co.*, 259 S.W.3d 104, 116–17 (Mo.App. E.D.2008). An ulterior purpose may be inferred from a wrongful use made of a judicial process. *Id.* at 117.

Viewing the evidence in the light most favorable to the verdict, and in favor of submission of the case to a jury, we find

substantial evidence that Appellants improperly filed the St. Louis County TRO actions not for the purpose of litigating a legitimate dispute, but instead as a mechanism for impermissibly delaying City from demolishing the structures on their property and to harass City. Important to this finding is the fact that Appellants did not use the 2008 and 2009 TRO actions to resolve any disputed issue between them and the City. Appellants dismissed both TRO actions thereby precluding any resolution on the merits. Appellants dismissed the 2008 TRO action prior to adjudication. Appellants quickly refiled the 2009 TRO action, which was nearly identical to the 2008 TRO, but again dismissed the 2009 without allowing a resolution of the merits. Viewed in the light most favorable to City, the jury reasonably could have inferred that Appellants' failure to litigate either TRO action to conclusion evidenced Appellants' intent to file the TRO claims for a purpose other than resolving Appellants' underlying dispute with City. Having concluded that evidence exists to support a finding that Appellants did not file the TRO actions for the purpose of adjudicating the merits of these claims, we reject Appellants' contention that the jury's inference of an improper motive and purpose is unreasonable and unsupported by substantial evidence.

■ Appellants argue that the record contains evidence that Appellants' lawsuits were nothing more than an aggressive yet proper attempt to determine City's right to demolish structures on Appellants' property. Again, while Appellants are free to suggest and argue that the evidence supports such a finding, the jury is free to reject such characterization and find the evidence proves something quite different. Our standard of review is deferential to the jury's findings of facts, and requires us to view the evidence in the light most favorable to a finding that Appellants filed the 2008 and 2009 TRO ac-

tions with an improper purpose. Again, mindful of this standard, we hold that substantial evidence exists from which the jury could have concluded that the issue of City's right to demolish the property had been finally resolved in the action before Judge Rauch, and that Appellants' 2008 and 2009 TRO actions were filed for the purpose of improperly delaying City's adjudicated right to demolish structures on Appellants' property, and for the improper purpose of harassing or vexing City.

C. *The record contains sufficient evidence of damages.*

■ We also find that the record contains sufficient evidence that City was damaged by Appellants' abuse of process. Warner testified that City incurred a number of specific expenses as a result of Appellants' 2008 and 2009 TRO actions. Warner testified that City incurred a $1000 insurance deductible expense, $5500 in unpaid demolition costs, $40,384.40 in legal fees prior to trial, and $9119 in expenses to prepare for trial. We find Warner's testimony is sufficient evidence of damages to warrant submission of the action to a jury.

After carefully reviewing the record, we find sufficient evidence from which a jury could find that Appellants made improper use of a legal process, had an improper purpose, and City was thereby damaged. Accordingly, the record supports submission of the case to the jury, instructing the jury on a potential award of damages, and denying Appellants' motions for a directed verdict, judgment as a matter of law and a new trial. Points One, Three, and Four are denied.

II. **The trial court did not err in submitting a punitive damages instruction.**

■ Whether a jury was properly instructed is a matter of law. *Klotz,* 311

S.W.3d at 767. We will only reverse the judgment of a trial court due to instructional error if the error resulted in prejudice that materially affected the merits of the underlying action. *Id.*

A case is submissible for punitive damages if the record contains "clear and convincing proof that the defendant intentionally acted either by a wanton, willful or outrageous act, or reckless disregard for an act's consequences (from which evil motive is inferred)." *Howard,* 332 S.W.3d at 788. (internal citation omitted). When reviewing the evidence to determine whether the instruction was appropriate, we view the evidence and all reasonable inferences in the light more favorable to submission of the instruction. *Id.* A case is submissible for punitive damages if the evidence and inferences are sufficient to allow a reasonable juror to conclude that it was highly probable that the defendant's conduct was outrageous because of evil motive or reckless indifference. *Id.*

City cites this Court's decision in *Guirl v. Guirl,* 708 S.W.2d 239 (Mo.App. E.D.1986) in support of its argument that submission of the punitive damages instruction was proper. In *Guirl,* a defendant counterclaimed for abuse of process against a plaintiff after the plaintiff maintained an action against the defendant for payment on a promissory note. *Id.* at 246. We held punitive damages were proper because the record contained evidence that the plaintiff willfully brought the underlying suit for enforcement of the promissory notes not for the purpose of actually obtaining payment on the notes, but to compel the defendant to divest stock in a company and surrender his controlling interest in the same. *Id.* In evaluating the award of punitive damages on the abuse of process claim, we noted that punitive damages are appropriate where the claimant has shown actual legal malice. *Id.* "The test to be applied in determining if malice

existed as a basis for an award of punitive damages is whether the actor did a wrongful act intentionally without just cause or excuse." *Id.* "The defendant must not only have intended to perform the act which is ascertained to be wrong, but must have known it was wrongful when he did it." *Id.* Finding sufficient evidence that the plaintiff in *Guirl* willfully and improperly commenced and maintained the suit, we upheld that the award of punitive damages. *Id.*

We agree that the record contains sufficient evidence from which a reasonable juror could have found a high probability that Appellants wrongfully abused the legal process intentionally and without cause. As discussed above, the record contains evidence from which a jury could find that Appellants filed two separate actions in St. Louis County Court, not for the purpose of resolving the merits of the underlying dispute, but to harass City. The record contains further evidence that Appellants sought two writs of prohibition in an attempt to avoid transfer of the action to the proper circuit court. Notably, Appellants filed their second petition of writ for prohibition after they had notice of the appellate court ruling denying their initial writ application. Appellants offered testimony at trial that parties may in good faith zealously litigate the issue of proper venue. We do not disagree with that general premise. However, the evidence presented supports a finding that Appellants' actions far exceeded that of "zealous representation." Here, Appellants continued to litigate the issue of venue well after this Court rejected St. Louis County as a permissible venue, and held venue was properly established in St. Charles County. Appellants filed the 2009 TRO in St. Louis County knowing that this Court held that a trial court in St. Louis County was not the proper forum to adjudicate the 2009 TRO. With knowledge of this Court's rul-

ing, Appellants nevertheless filed the 2009 TRO in St. Louis County. These facts are sufficient for a jury to conclude that Appellants filed the 2009 TRO not for the purpose of seeking a proper judicial remedy, but for no discernable purpose other than to force City to contest venue.

We again note that in their briefs and during oral argument, Appellants assert that their right to protect against the demolition of buildings on their property permitted them to repeatedly file verified petitions in venues they knew to be improper, and even after a court of law had ruled the venue was improper. Appellants contend that procedures existed allowing City to seek a change of venue, and that Appellants bear no responsibility when initiating litigation in an improper venue. We disagree. We do not minimize the rights of litigants to contest unsettled questions of law and to aggressively pursue their rights under the law. However, we are not presented with such facts here. Instead, without justification, Appellants ignored binding judicial rulings on a resolved legal issue. Given these facts, a jury could reasonably conclude Appellants harbored a purpose to delay, harass, or increase the expense of litigation.

After careful review, we hold that the record contains sufficient evidence from which a jury could have found punitive damages were appropriate. The record contains evidence that Appellants commenced litigation in courts without proper venue, litigated the venue issue to the appellate court after a specific adverse ruling from this Court, and then dismissed their actions without seeking a resolution on the merits after substantial expense had been incurred. The jury could reasonably conclude from the evidence that Appellants' purpose in filing the lawsuits was to vex City and not to seek a resolution of the demolition issue. Viewed in the light most favorable to submission of the in-

struction, this evidence is sufficient for a reasonable juror to conclude that there was a high probability that Appellants' conduct was outrageous because of an evil motive or reckless indifference. *See Howard*, 332 S.W.3d at 788. Accordingly, submission of the punitive damages instruction was proper. Point denied.

## III. The trial court did not commit plain error in submitting its verdict director.

■■■ Appellants argue that the trial court committed instructional error by submitting a verdict director that constituted a roving commission. The verdict director submitted by the trial court stated:

> Your verdict must be for counterclaim plaintiffs Mark Warner, Russell Cissel and the City of Portage des Sioux if you believe:
>
> First, the counterclaim defendants Klaus Lambert and Constance Alt had an ulterior, improper, or collateral purpose when they instituted and maintained judicial proceedings against the counterclaim Plaintiffs Mark Warner, Russell Cissel and the City of Portage des Sioux, and
>
> Second, in doing so, the counterclaim defendants Klaus Lambert and Constance Alt committed a willful act, not proper nor warranted in the regular conduct of the proceeding, and
>
> Third, the counterclaim plaintiffs, Mark Warner, Russell Cissel and the City of Portage des Sioux were thereby damaged.

Appellants argue that the verdict director constituted an improper roving commission because the instruction failed to identify the specific legal proceedings filed by Appellants which City contends were the basis for its abuse of process action. Appellants assert that by failing to specifi-

cally identify the 2008 and 2009 TRO actions, the jury was allowed to consider any judicial proceeding discussed during trial as a basis for finding an abuse of process.

▮ Before we address the substance of Appellants' claim of error, we must determine if the claim of error was preserved for appellate review. The record before us shows that during the jury instruction conference, Appellants objected to a proposed verdict director which stated the second element of the claim as whether Appellants improperly "instigated" judicial proceedings. Appellants objected to the first proposed verdict director on the same ground they now assert: that the instruction constituted a roving commission by failing to specifically identify the 2008 and 2009 TRO actions. Following Appellants' objection, the trial court changed the language of the initial verdict director from "instigated" to "instituted and maintained." The record shows that Appellants acquiesced to this revision by stating, "That's fine, Judge." The record shows that Appellants did not object further to the verdict director as modified, and did not submit an alternative verdict director. Because Appellants agreed to the verdict director as modified, they have not preserved this issue for appeal. Where an appellant has failed to preserve error for review, we may review the point for plain error. *State v. Rowe*, 363 S.W.3d 114, 119 (Mo.App. S.D.2012); Rule 30.20.

▮ Plain error review in civil cases is discretionary, and "may not be invoked to cure the mere failure to make proper and timely objections." *Atkinson*, 289 S.W.3d at 276. To establish that an instructional error constituted plain error, an appellant must show that the trial court so misdirected or failed to instruct the jury that it is evident that the instructional error affected the verdict. *Hensley v. Jackson Cnty.*, 227 S.W.3d 491, 497–98 (Mo. banc 2007).

In this case, Appellants argue that the phrasing of the verdict director may have resulted in confusion with the jury as to which judicial proceedings constituted the basis of City's abuse of process claim. Having reviewed the entire record for plain error, we are not persuaded that the record demonstrates a potential ambiguity that clearly affected the jury's verdict. To the contrary, Warner specifically testified that City was not seeking damages as a result of any of the prior appeals, but only for expenses related to the 2008 and 2009 TRO actions. Point denied.

## IV. The trial court did not err in admitting evidence of the factual findings of a previous trial court.

▮ We review a trial court's ruling as to the admission of evidence for an abuse of its discretion. *Madorie*, 156 S.W.3d at 355. A trial court abuses its discretion when it makes a ruling that is "clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Kemp*, 212 S.W.3d 135, 145 (Mo. banc 2007). However, even if we find an abuse of discretion, we will not reverse unless we also find that the trial court's error is "so prejudicial that it deprived the defendant of a fair trial." *Id.* Error is not prejudicial unless there is a "reasonable probability that the trial court's error affected the outcome of the trial." *Id.* (internal citation omitted).

Constance Alt testified that Appellants were unable to remedy the condition of their property because City failed to issue them the appropriate permits required to complete the necessary repairs. During City's redirect examination of Alt, City questioned her about her earlier testimony that Appellants attempted to remedy the condition of their property. City introduced into evidence portions of a tran-

script from a proceeding before the Circuit Court of St. Charles County. The content of the transcript indicated that Judge Rauch of the Circuit Court of St. Charles County found that Appellants did not make a real effort to remedy the condition of their property, nor did City unduly prevent Appellants from undertaking repair work by withholding permits. Appellants now contend that the trial court improperly admitted evidence of Judge Rauch's findings on the issue of Appellants' attempts to remedy the condition of their property. The following relevant exchange occurred on the record during City's examination of Alt:

A: [City] wouldn't issue us any permits or work with us [to restore the property] because it was always in litigation.

Q: I know you make that argument, I understand that. I think the jury understands that, but you were arguing that in front of Judge Rauch, correct?

A: That is correct.

Q: After listening to you and two hearings back in 2004, your hearing in 2007, I am going to show you the transcript, comments made by Judge Rauch where you tried to pull them out as quick as you were testifying?

Mr. KRESS: That's improper. It's not proper impeachment. It's hearsay.

COURT: To the extent that it goes to motivation, I will overrule the objection.

Q: Judge Rauch, when she sat in the courtroom listening, said the respondents, which are you and Mr. Lambert, correct?

A: Yes.

Q: To have done nothing for years. Do you remember her saying that to you?

A: I don't remember the exact words that she said, okay.

Q: For every year after this filing, okay, after the entry of the mandate by the Court of Appeals, that you did nothing. She made that statement, correct?

A: We weren't allowed to do anything because we had an injunction against us that said we cannot work on the property.

Q: And Judge Rauch said there are just-you gave her documents, you tried to show to her that you were trying to make a permit application, correct?

Mr. KRESS: Objection, your honor, it's hearsay. It's also irrelevant, and the Court speaks through it's docket, not through the actual transcript. It speaks through the judgments and orders that they have properly written, filed with the Court.

COURT: I will overrule, not for the truth of the matter but to show knowledge and subsequent actions and motivation.

Q: In the presence of you and Mr. Lambert, okay, the judge looked at your documents and heard your arguments and listened to your attorneys and said, there is just no documents whatsoever in support, and the Court finds that these do not constitute any good faith effort to comply. Later she says it again. Your efforts do not constitute good faith efforts, right?

A: If that's what it's saying there.

■ The introduction of this evidence was within the trial court's discretion. We note first that the trial court considered Appellants' hearsay objection, and limited the proffered evidence to non-hearsay use. The record does not show that the use of the evidence exceeded its non-hearsay purpose. We also note the relevance of the evidence offered by the City. Appellants opened the door to the issue of the Appellants' alleged efforts to remedy their property, and therefore rebuttal evidence was permissible. "When a party opens the door to a topic, the admission of rebuttal

evidence on that topic becomes permissible." *Howard,* 332 S.W.3d at 785. Point denied.

### Conclusion

Appellants have aggressively litigated to protect their property. We find no fault in exercising those highly valued and cherished rights. However, sufficient evidence exists that Appellants transgressed beyond what is a proper use of the judicial process, thereby subjecting Appellants to a jury verdict finding them liable for abuse of process. Further finding no instructional or evidentiary error, we affirm the judgment of the trial court.

PATRICIA L. COHEN and ROBERT M. CLAYTON III, JJ., Concur.